NICOLÁS ORTIZ LEBRÓN, recurrente, *v.* EL REGISTRADOR SUSTITUTO DE LA PROPIEDAD DE GUAYAMA, recurrido.

Núm. 1112.—*Sometido:* Noviembre 2, 1942. *Resuelto:* Noviembre 17, 1942.

*Víctor M. Pons,* abogado del recurrente; el registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Por escritura número 111, de 30 de julio de 1942, ante el notario don Víctor M. Pons Gil, don José Ramón Díaz Benítez constituyó hipoteca voluntaria a favor del recurrente sobre una finca de su propiedad, en garantía de un préstamo por la cantidad de $500, sus intereses y honorarios de abogado para el caso de reclamación judicial, señalando para estas dos últimas atenciones las cantidades de $100 y $200 respectivamente. Presentada la escritura para su inscripción en el Registro de la Propiedad, el Registrador la prac-

ticó "con el defecto subsanable de no estar aceptada en forma legal por el acreedor la tasación de la finca". Contra la referida nota interpuso el acreedor hipotecario el presente recurso.

■■■ El artículo 127 de la Ley Hipotecaria, según fué enmendado por la Ley núm. 69 de 2 de mayo de 1931 (pág. 433), en lo pertinente prescribe:

"Art. 127. En la escritura de hipoteca se hará constar el precio *en que tasan la finca los contratantes*, para que sirva de tipo a la primera subasta que se debe celebrar, en el caso de que, vencido el plazo del préstamo, no conste en el registro de la propiedad el pago de dicho préstamo." (Bastardillas nuestras.)

El transcrito precepto existía en la Ley Hipotecaria para las provincias de Ultramar, con la única diferencia que donde ahora dice "primera subasta" antes decía "única subasta", y continuó en vigor en esta Isla hasta que a virtud de las disposiciones de la "Ley relativa a las sentencias y manera de satisfacerlas", aprobada en 9 de marzo de 1905 (Comp. 5295–5303, C. Enj. Civil, ed. 1933, pág. 122), se hizo innecesario consignar el precio en las escrituras de hipoteca, ya que de conformidad con la ley últimamente citada, sólo una subasta debía celebrarse en el procedimiento sumario ejecutivo, equiparándolo así a las ventas judiciales celebradas bajo el procedimiento ordinario.

Es de notar que el precepto contenido en el artículo 127 no existía en la Ley Hipotecaria de la Península; pero al aprobarse en aquel país la Ley Hipotecaria de 16 de diciembre de 1909, dicho precepto se consignó sustancialmente en dicha ley, en los artículos 130 y 131 de la ley y 201 del Reglamento.

Se observará que el artículo 127 de nuestra ley vigente no dice que el precio sea tasado por el deudor o por el acreedor separadamente, sino que expresamente prescribe que "en la escritura de hipoteca se hará constar el precio en que tasan la finca *los contratantes*," es decir, que la fijación

de dicho precio`deberá ser el resultado de la unión de volun-
tades del deudor y del acreedor. El artículo 130 de la
vigente ley española sustituye la palabra "contratantes" de
la nuestra por el vocablo "interesados", pero más claro,
en el artículo 131 dice, en la regla 9ª., que "servirá de tipo
para la subasta el *pactado* en la escritura de constitución de
hipoteca," y más claro aún si se quiere, el artículo 201 del
reglamento, en su regla 3ª. prescribe que "la primera su-
basta se celebrará con sujeción al tipo fijado en la escritura
*por el hipotecante y el acreedor hipotecario.*"

No cabe duda, pues, que la escritura que dió lugar a la
nota que motiva este recurso, otorgada, como hemos visto,
el 30 de julio de 1942, en la cual no consta que la fijación del
precio para la subasta se hiciera de conformidad con el acree-
dor hipotecario—lo que equivale a no haberse fijado el precio
*por los contratantes*—, infringe el artículo 127 antes citado.
Y cabe ahora preguntar: ¿esa infracción al artículo 127,
anula la obligación?

En la obra titulada "El Derecho Hipotecario en Cuba,
Jurisprudencia Civil en Materia Hipotecaria", por Angel
Clarens, tomo 8, pág. 72, se cita al efecto la sentencia del
Tribunal Supremo de Cuba de 11 de junio de 1902, interpre-
tativa del mismo precepto legal que ahora nos ocupa, en la
que se estableció la siguiente doctrina:

"que si bien la Ley Hipotecaria ordena que en la constitución de la
hipoteca se hará constar el precio en que los otorgantes tasan las
fincas gravadas, no hay precepto legal alguno ni en la ley citada ni
en el Código Civil que disponga que cuando se omite aquella mani-
festación sea nulo el contrato, por lo que inscrita la hipoteca la
omisión de la expresada circunstancia no es, por su propia naturaleza,
tal que invalide los efectos de dicha escritura, por lo que no puede
legalmente ser declarada nula."

Y este tribunal, en el caso de *Emanuelli* v. *Corte,* 49 D.P.R.
775, 780, refiriéndose a la omisión del precio para la tasación
en la escritura de hipoteca, dijo:

"Si no consta, no será por ello nulo el contrato, pero el acreedor no estará en condiciones de ejecutar su crédito por la vía sumarísima que fija la propia Ley Hipotecaria completada por su Reglamento."

Si la obligación no es nula, claro es que la omisión no puede calificarse de defecto insubsanable. Pero, ¿puede acaso calificarse de defecto subsanable, como sostiene el registrador? No, a nuestro juicio, toda vez que de conformidad con el artículo 65 de la Ley Hipotecaria son defectos subsanables los que afectan a la validez del título sin producir necesariamente la nulidad de la obligación en él constituída, y el defecto en este caso evidentemente no afecta la validez de la escritura.

Morell, en su obra sobre "Legislación Hipotecaria", tomo 3, pág. 226, bajo el epígrafe "Defectos de los títulos que o no existen realmente, o no constituyen faltas subsanables ni insubsanables", dice:

"El acto o contrato no es necesariamente nulo ni por su naturaleza, ni por sus condiciones, ni por incapacidad de las partes; tampoco el título encierra un vicio tal que pueda decirse convertido en un documento privado o sin valor ni eficacia, y ni del Registro ni de preceptos determinados de la Ley Hipotecaria o de otras leyes especiales, se deriva causa bastante para rechazar en absoluto la inscripción. Existen, sin embargo, faltas o defectos menos graves. ¿Deberán apreciarse todas ellas de igual modo, estimándolas subsanables, y no dando acceso a los títulos en el Registro más que mediante anotaciones preventivas, hasta tanto que el defecto, grande o pequeño, se subsane? No tal. Como dijimos, existen faltas de escasa importancia, omisiones de requisitos o formalidades, que no impiden la inscripción, ni la suspenden."

En armonía con lo dicho, el mismo autor, en la página 233 de la obra y tomo citados, se expresa así:

"La Resolución de 11 de Febrero de 1911, declara que no es defecto que impida inscribir una escritura de hipoteca, la omisión del domicilio del deudor *y del valor de la finca*, si bien en tal caso no cabe el procedimiento judicial sumario establecido en el artículo 130 de la nueva ley." (Bastardillas nuestras.)

Si se tiene en cuenta que de conformidad con el artículo 42, inciso 9°., de la vigente Ley Hipotecaria de España, el defecto subsanable, contrario a lo que prescribe nuestra ley, no permite la inscripción del título sino que produce anotación preventiva solamente, se comprenderá que al declararse en la citada resolución de 11 de febrero de 1911 que la omisión que nos ocupa "no es defecto que impida inscribir", indica que dicha omisión no es defecto subsanable, y sí uno de los defectos menos graves que no constituyen faltas subsanables ni insubsanables.

Si bien el no constar de la escritura de hipoteca que el precio para la subasta haya sido fijado de mutuo acuerdo entre el deudor y el acreedor es un defecto en que no deben incurrir los notarios, sin embargo, como no constituye falta subsanable, puesto que no afecta la validez del título, como queda dicho, *procede la revocación de la nota recurrida y ordenar la inscripción del documento sin defecto subsanable.*