Ana Joaquina Emanuelli Jiménez, representada por su señora madre con patria potestad, Jesusa Jiménez Correa, peticionaria, *v.* La Corte de Distrito de San Juan, Hon. Pablo Berga, Juez, demandada.

No. 1064.—*Sometido:* Enero 27, 1936. *Resuelto:* Abril 6, 1936.

*H. Torres Solá,* abogado de la peticionaria; *R. Cuevas Zequeira,* abogado del Sr. Dávila en los pleitos números 21,860 y 21,861 en la corte inferior; *Harry B. Llenza,* abogado de la Sra. Llenza Vda. de Emanuelli.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

La menor Ana Joaquina Emanuelli representada por su madre con patria potestad, Jesusa Jiménez, pidió a esta corte que expidiera un auto de *certiorari* a los efectos de anular dos resoluciones de la Corte de Distrito de San Juan dictadas en cierto procedimiento ejecutivo hipotecario.

El auto fué expedido y contestado por el Juez Berga de la corte del distrito remitiendo los autos originales del caso No. 21961 seguido por Antonio Dávila contra Lillian Llenza viuda de Emanuelli *et al.,* sobre ejecución de hipoteca y del pleito número 21860 instado por Ana Joaquina Emanuelli contra Antonio Dávila *et al.,* sobre inexistencia de contrato.

El 27 de enero último se oyó a las partes interesadas. La peticionaria sostuvo su alegado derecho, Antonio Dávila solicitó la nulidad del auto de *certiorari* expedido y Lillian Llenza viuda de Emanuelli presentó un escrito explicando su posición en el asunto, quedando así el caso sometido definitivamente al tribunal.

Sostiene Dávila la improcedencia del auto porque las resoluciones impugnadas han sido apeladas, porque de acuer-

do con el artículo 175 del Reglamento Hipotecario el *certiorari* no es el remedio adecuado para revisar actuaciones judiciales en un procedimiento sumario hipotecario, porque la peticionaria ha ejercitado ya el único derecho que le reconoce la ley al iniciar el pleito sobre inexistencia de contrato y porque está impedida como heredera de aducir lo que no hubiera podido alegar su causante.

██ Existe en verdad una apelación interpuesta cuya desestimación tiene Dávila solicitada por no ser apelables las resoluciones recurridas, y por constituir el recurso un ataque colateral al procedimiento ejecutivo sumario contrario a la letra y al espíritu de la Ley Hipotecaria. Bajo esas circunstancias y no siendo la existencia del recurso de apelación en propios casos un obstáculo insuperable para la interposición del *certiorari,* en el ejercicio de nuestra discreción seguiremos adelante. Y como el *certiorari* ha sido usado en esta jurisdicción en casos especiales para revisar actuaciones en procedimientos ejecutivos sumarios, no consideraremos tampoco como obstáculo infranqueable lo dispuesto en el artículo 175 del Reglamento para la Ejecución de la Ley Hipotecaria ni la pendencia del pleito sobre inexistencia de contrato. Tampoco creemos que esté la peticionaria impedida. No estamos convencidos de que la cuestión que levanta no hubiera podido suscitarse por su causante.

██ Habiendo así dispuesto de las cuestiones previas aducidas, iremos al fondo del asunto. El pleito sobre inexistencia No. 21860, envuelve la hipoteca cuya ejecución se solicita en el caso No. 21961. El escrito inicial en este caso se presentó en noviembre 16, 1934. Al día siguiente se ordenó el requerimiento del deudor. Se libró el mandamiento el 20 y el 21 del propio noviembre fué cumplimentado por el márshal requiriendo personalmente a la menor Joaquina, a Jesusa Jiménez como madre con patria potestad sobre la misma y a Lillian Llenza viuda de Emanuelli por derecho propio y como administradora de la herencia.

Pasaron más de ocho meses y el 5 de agosto de 1935 el ejecutante Dávila presentó una moción a la corte manifestando que ni en la escritura de hipoteca ni en los pagarés garantizados, los deudores Joaquín Emanuelli y su esposa Lillian Llenza hicieron constar el precio en que tasaban la finca hipotecada para que sirviera de tipo a la subasta en caso de ejecución y que habiendo transcurrido los treinta días del requerimiento sin que la deuda se hubiera hecho efectiva y teniendo el ejecutante derecho a continuar la ejecución, procedía que la corte citara a los demandados para que con audiencia de todas las partes interesadas en el pleito se fijara el precio de tasación, de acuerdo con lo dispuesto en el artículo 127 de la Ley Hipotecaria tal como quedó enmendado por la Ley núm. 69 de mayo 2, 1931 (pág. 433).

Proveyó la corte de conformidad. Se avino la administradora judicial y se opuso la menor. Su oposición se basó en lo alegado en el pleito sobre inexistencia y en:

"CUARTO: Alega además la demandada compareciente que, aun en la hipótesis de que se tratara de una hipoteca válidamente constituída, esta Honorable Corte de Distrito carece de facultad, poder, autoridad y jurisdicción para proceder a, o intervenir en, el avalúo o tasación solicitado por el demandante, por cuanto la hipoteca en cuestión fué constituída con posterioridad a la vigencia del Artículo 127 de la Ley Hipotecaria y porque ésta y su Reglamento sólo autorizan el avalúo supletorio que aquí se ha solicitado en aquellos casos en que la hipoteca se hubiera inscrito con anterioridad a la vigencia de la Ley Hipotecaria de 1893, por la que se dispuso la tasación a que se refiere el indicado Artículo 127 de la expresada ley.

"QUINTO: Bajo igual hipótesis, alega la demandada que la tasación que ahora se intenta es tardía y extemporánea porque, conforme al Artículo 175 del Reglamento para la Ejecución de la Ley Hipotecaria, las diligencias para el nombramiento de peritos se practicarán al verificarse el requerimiento de pago y el requerimiento de pago en este caso se efectuó en el mes de noviembre de 1934.

"SEXTO: Alega asimismo la demandada compareciente que el procedimiento iniciado por el demandante en este caso, tendente a obtener el avalúo, aun cuando el contrato de hipoteca fuera legal y eficaz, no está autorizado por la Ley Hipotecaria ni por el Reglamento

para su Ejecución, toda vez que el avalúo supletorio, según el Artículo 175 del Reglamento, debía efectuarse mediante peritaje, en ausencia de acuerdo.''

El 3 de diciembre de 1935 la corte resolvió la cuestión en favor del ejecutante, decretando que las partes de común acuerdo fijaran el precio de tasación de la finca que sirva de base a la primera subasta y si así no lo hicieren dentro de los diez días de notificadas, procedería la corte a nombrar un perito con cargo al ejecutante para tasar la finca y con vista de su informe fijar el tipo para la primera subasta.

Pidió reconsideración la menor y la corte negó su moción por resolución de enero 3, 1936. Apeló la menor el 4 de enero y el 9 archivó en esta Corte Suprema su petición de *certiorari.*

A nuestro juicio tiene razón la menor. Se trata de un procedimiento especial sumarísimo en el que se incluyó la previa tasación como una de sus características esenciales, según se hizo resaltar en la propia exposición de motivos de la ley dirigida a las Cortes Españolas por el Ministro de Ultramar Sr. Antonio Maura y Montaner, como sigue:

''. . . La previa tasación, la fijeza en la competencia judicial para las diligencias precisas, la supresión de todo pleito, un solo requerimiento y la subasta inmediata, son las bases de la nueva legislación; suprímense juicios, excusiones, exhortos, mandamientos de embargo de lo que está ya hipotecado, incidentes, subastas simultáneas y tantas otras barreras atravesadas en la senda del crédito territorial con noble ánimo, en las que sólo tropieza realmente la buena fe.'' Ley Hipotecaria para las Provincias de Ultramar, Ed. 1893, p. 10.

La ley enmendatoria del artículo 127 de la Ley Hipotecaria continúa exigiendo la previa tasación. Es la núm. 69 de 1931, Leyes de ese año, p. 433. Dice:

''Artículo 1.—El artículo 127 de la Ley Hipotecaria vigente queda enmendado en la forma siguiente:

'' 'Artículo 127.—En la escritura de hipoteca se hará constar el precio en que tasan la finca los contratantes, para que sirva de tipo a la primera subasta que se debe celebrar, en el caso de que, vencido

el plazo del préstamo, no conste en el registro de propiedad el pago de dicho préstamo.

" 'Si no produjere remate ni adjudicación la primera subasta, en la segunda que se celebrare servirán de tipo las dos terceras partes del precio en que hayan tasado la finca los contratantes, pero cuando esas dos terceras partes no excedieren de la cuantía de las responsabilidades preferentes, esa cuantía señalará el mínimo de las posturas admisibles.

" 'Si tampoco hubiere remate ni adjudicación en la segunda subasta, regirá como tipo en las otras subastas que pudieran celebrarse el valor total a que ascienden los créditos preferentes.'

"Artículo 2.—Las disposiciones de la Ley de 9 de marzo de 1905, relativa a las sentencias y la manera de satisfacerlas, en cuanto se opongan a los preceptos del artículo 127 de la Ley Hipotecaria, según queda enmendado por el artículo anterior, y toda otra ley, o parte de ley, que esté en contradicción con la presente, quedan derogadas.''

Esa ley estaba en vigor cuando se constituyó la hipoteca de que se trata y es terminante. Como hemos dicho exige en la escritura de constitución de hipoteca la tasación del inmueble hipotecado. Si no consta, no será por ello nulo el contrato, pero el acreedor no estará en condiciones de ejecutar su crédito por la vía sumarísima que fija la propia Ley Hipotecaria completada por su Reglamento.

La distinción que en su resolución de diciembre 3, 1935, hace la corte entre hipotecas convenidas por las partes y las impuestas por la sola disposición del dueño del inmueble, es correcta, pero su conclusión de que el artículo 127 de la Ley Hipotecaria sólo se refiere a las primeras, no nos convence.

Cita en su apoyo la corte de distrito los comentaristas Morell y Sancho Tello que invocó el ejecutante en el memorándum que le presentara así:

Cita de Morell:

"Pero como esa hipoteca se constituye sólo por el deudor, y no es necesaria ni posible la intervención ni la aceptación de los tenedores de las obligaciones, ni la circulación de éstas ha de detenerse

en cada caso en el examen y apreciación del valor de la garantía, resulta de hecho el mal que señala Aragonés: ha de juzgarse, se negocien o no los títulos en la Bolsa, por el estado financiero de la sociedad o particular que los emite, y no es raro que el valor nominal de cada obligación, aun siendo hipotecaria, sea distinto al valor real, superior o inferior a él según las circunstancias.''

''¿Y qué diremos respecto al valor de los inmuebles o derechos hipotecados? Según el Art. 130, debe constar siempre en la escritura de hipoteca, para poder utilizar el procedimiento sumario, el valor en que los interesados tasan la finca para que sirva de tipo en la subasta que ha de celebrarse. ¿Es posible que interviniendo solamente el deudor, marque éste a su gusto el tipo de la subasta, o dé a las fincas el valor que quiera?'' 4 Morell, Legislación Hipotecaria, 259, 262.

Cita de Sancho Tello:

''Requiere la fijación del precio el acuerdo mutuo de acreedor e hipotecante y sólo, por consiguiente, por ese mismo mutuo acuerdo podrá alterarse haciéndolo constar en instrumento público, que habrá de ser presentado al Registro de la Propiedad para su toma de razón.'' Sancho-Tello, Redacción de Instrumentos Públicos, 886.

Como puede verse, los comentaristas no expresan opinión alguna específica y terminante sobre la cuestión. Ninguna otra autoridad se ha citado ni hemos podido encontrar nosotros mismos.

La ley no distingue. Es cierto que dice que en la escritura se hará constar el precio en que tasan la finca los contratantes y que es en las hipotecas convenidas desde un principio entre partes que éstas pueden actuar conjuntamente desde un principio también, pero en las otorgadas por el dueño, para que tengan realidad en la práctica, la existencia de contratantes es también finalmente necesaria. El dueño grava su propiedad en garantía de instrumentos negociables y es cuando los negocia que el contrato surte todos sus efectos y en tal momento existen los contratantes de que habla el artículo 127 de la Ley Hipotecaria. Al resolverse a contratar, el adquirente del documento acepta la garantía

conforme fué establecida por el deudor y surge el mutuo acuerdo.

■ Partiendo de la base de la aplicabilidad de la ley a este caso ¿pudo recurrirse a lo dispuesto en el artículo 175 del reglamento para la ejecución de la Ley Hipotecaria? Dice el reglamento:

"Los acreedores que tengan inscrito su derecho con anterioridad a la ley vigente podrán optar por este procedimiento sumario; mas cuando los títulos de sus créditos no expresen la conformidad del deudor con un precio determinado para la subasta, habrán de acreditar esta conformidad, consignada en documento público, o pedir el justiprecio, con arreglo a la ley de Enjuiciamiento Civil, para preparar el anuncio de la subasta; entendiéndose siempre aplicables las reglas de esta sección, que señalan el tipo mínimo para salvaguardar las responsabilidades preferentes. Las diligencias para el nombramiento de perito se practicarán al verificarse el requerimiento de pago y se entenderán con las mismas personas con quienes aquél deba formalizarse."

Como puede verse, por los expresos términos de la disposición se trata de un método fijado para las hipotecas constituídas con anterioridad al mandato del legislador sobre la constancia en la escritura de la tasación. Y aquí la hipoteca se constituyó después.

Además, de ser aplicable el método, debió invocarse, también de acuerdo con sus términos, para seguirlo, al verificarse el requerimiento y no luego como aquí se hizo.

Y no se diga que estamos en el caso del art. 36 del Código de Enjuiciamiento Civil, porque aquí si bien el acreedor a virtud de la deficiencia del documento constituyendo la hipoteca no puede seguir el procedimiento sumarísimo, tiene a su alcance el ordinario que le otorga el propio Código de Enjuiciamiento Civil y que, dadas las circunstancias que concurren, quizá sea en verdad el más justo y equitativo para todos los intereses envueltos.

*Deben anularse las resoluciones de diciembre 3, 1935, y*

*enero 3, 1936, y declararse no haber lugar a la moción del ejecutante de agosto 5, 1935.*

El Juez Asociado Señor Travieso no intervino.