DOLORES COTTO VARGAS, peticionaria, *v.* CORTE DE DISTRITO DE GUAYAMA, HON. R. CORDOVÉS ARANA, JUEZ, demandada.

Núm. 1117.—*Sometido:* Diciembre 8, 1937. *Resuelto:* Enero 28, 1938.

*M. Guzmán Texidor,* abogado de la peticionaria; *C. Domínguez Rubio* y *L. Domínguez Rovira,* abogados del interventor, demandante en el pleito principal.

EL JUEZ ASOCIADO SEÑOR WOLF emitió la opinión del tribunal.

En noviembre 25 de 1936 Guillermo Garáu Pascual inició un procedimiento ejecutivo sumario ante la Corte de Distrito de Guayama contra Félix Cotto Vargas, Dolores Cotto Vargas y la sucesión desconocida de Valentina Cotto Vargas, con

el objeto de recobrar el importe de un préstamo hipotecario otorgado por Valentina Cotto Vargas por escritura de 8 de diciembre de 1928. En el curso ordinario de los procedimientos la corte expidió una orden de venta, y en cumplimiento de la misma el márshal señaló el 30 de marzo de 1937 para celebrar la subasta. En marzo 12 del referido año los demandados solicitaron se dejara sin efecto la orden de venta, fundados en que aunque el procedimiento se había iniciado el 25 de noviembre de 1936, no se había dado cumplimiento a las disposiciones de la Ley núm. 81 de mayo 13 de 1936 (Leyes de ese año, págs. 433, 437). La parte pertinente de esa ley lee como sigue:

"Los acreedores que tengan inscrito su derecho con anterioridad a la ley vigente podrán optar por este procedimiento sumario; mas cuando los títulos de sus créditos no expresen la conformidad del deudor con un precio determinado para la subasta, habrán de acreditar esta conformidad, consignada en documento público, o pedir el justiprecio, con arreglo a la Ley de Enjuiciamiento Civil, para preparar el anuncio de la subasta; entendiéndose siempre aplicables las reglas de esta sección, que señalan el tipo mínimo para salvaguardar las responsabilidades preferentes. Las diligencias para el nombramiento de perito se practicarán al verificarse el requerimiento de pago y se entenderán con las mismas personas con quienes aquél deba formalizarse."

Los demandados sostenían que en la escritura no se fijaba el valor de la finca hipotecada y que no se había seguido ninguno de los métodos prescritos anteriormente para corregir esa omisión. Luis Janer, como juez sustituto, con fecha 29 de marzo de 1937 declaró con lugar la moción de los deudores y procedió a anular todo el procedimiento. Al solicitarse la reconsideración ante el juez en propiedad, Gabriel Castejón, esta orden fué revocada y se decretó que el procedimiento continuara hasta su terminación. Esta última orden, que fué apelada para ante este tribunal, estaba fechada el 1 de mayo de 1937. La apelación fué desestimada por nosotros el 3 de noviembre de 1937 debido a que de acuerdo con la ley la orden

era inapelable (ante, pág. 215). Uno de los demandados, Dolores Cotto Vargas, radicó entonces el presente recurso de *certiorari* con fecha 11 de noviembre de 1937 y el auto fué expedido al día siguiente.

Ante nos existen dos cuestiones importantes para su determinación. Una se refiere a si se puede permitir que se interrumpa o suspenda un procedimiento ejecutivo sumario por una razón no expresada en el artículo 175 del Reglamento para la Ejecución de la Ley Hipotecaria, y la otra envuelve la interpretación de varias disposiciones legislativas y su efecto.

 Antes de 1893 un acreedor hipotecario no necesitaba hacer una previa tasación o valoración de la propiedad en la escritura. Sin embargo, el artículo 127 de la Ley Hipotecaria de 1893 disponía que se hiciera tal tasación, y el artículo 175 del Reglamento proveía la manera de subsanar tal omisión en las hipotecas constituídas con anterioridad a dicho estatuto si las mismas iban a ser ejecutadas sumariamente. Entonces vino la ley de marzo 9, 1905 (Comp. 5295–5303), y prescribió la forma en que se debían satisfacer las sentencias. Desde 1905 hasta 1931 era innecesario que los acreedores garantizados y los deudores acordaran en la escritura de hipoteca, o posteriormente, el precio que debía fijarse a la propiedad hipotecada. En 1931 la Legislatura aprobó la Ley núm. 69 de 1931 (Leyes de ese año, pág. 433), que reenactó el artículo 127 de la Ley Hipotecaria en el sentido de exigir nuevamente que en las escrituras de hipoteca se hiciera constar el valor que debía fijársele a las fincas en la primera subasta, y lo enmendó en el sentido de exigir más de una subasta. Como resultado de esta ley, que este tribunal, en el caso de *Iglesias* v. *Registrador*, 43 D.P.R. 19, decidió era prospectiva, se resolvió más tarde que si se otorgaba una hipoteca con posterioridad a la aprobación de esa ley, sin hacer constar el valor de la finca, el único remedio del acreedor era acudir a un pleito ordinario en ejecución de hipoteca y que estaba impedido de recurrir al procedimiento sumario. *Emanuelli* v. *Corte de Distrito*, 49 D.P.R. 775.

La ley de 1936 (núm. 81, supra), de la que ya hemos citado, suscitó la verdadera duda o conflicto en que hubo divergencia de criterio entre los dos jueces de la corte inferior. El Juez Janer resolvió que la ley estaba concebida en términos muy generales y que comprendía cualesquiera contratos de hipoteca entonces existentes. El Juez Castejón decidió que la ley de 1936 era de naturaleza transitoria y que su objeto era ofrecer a aquellos acreedores que tuvieran hipotecas inscritas con anterioridad a la Ley Hipotecaria de 1893 (*sic*) la oportunidad de acudir al procedimiento ejecutivo sumario, si así lo deseaban.

Hemos leído cuidadosamente las leyes de 1931 y 1936 e interpretado su aprobación en el sentido de expresar la intención legislativa de poner en vigor un sistema completo para la valoración de propiedades antes de su venta, en forma algo similar a la existente entre 1893 y 1905. Creemos que la ley de 1936 comprende toda hipoteca inscrita con anterioridad a su aprobación. Además, somos del criterio de que la ley es retroactiva y que meramente afecta el procedimiento a seguirse en el ejecutivo sumario, cuando la escritura no expresa el precio mínimo en que debe venderse la finca en la primera subasta. Tal interpretación conduce a que se establezca un procedimiento uniforme para todos los ejecutivos sumarios.

La duda principal que hemos tenido es si al deudor hipotecario debe permitírsele que acuda al recurso de *certiorari* en vez de al remedio ordinario concedídole por el artículo 175 del Reglamento para la Ejecución de la Ley Hipotecaria, o sea a un pleito plenario. De ordinario este Tribunal no ha puesto ni pondrá obstáculo alguno a los procedimientos ejecutivos sumarios iniciados de conformidad con la Ley Hipotecaria, mas la cuestión envuelta es de tal magnitud que su resolución trazará el curso a seguir en innumerables litigios futuros, y como estamos convencidos de que el procedimiento ejecutivo puede ser anulado por haberse dejado de

hacer una tasación con anterioridad a la venta, no creemos que debe obligarse al deudor a instruir un recurso ordinario.

Por tanto, *se anula la orden dictada por el Juez Castejón con fecha 1 de mayo de 1937, y la orden dictada por el Juez Janer el 29 de marzo del mismo año es igualmente anulada en tanto en cuanto declara nulo y sin efecto legal alguno desde su principio el procedimiento ejecutivo, y se devuelve el caso para ulteriores procedimientos de conformidad con las disposiciones del artículo 175 del Reglamento para la Ejecución de la Ley Hipotecaria, según fué enmendado por la Ley núm. 81 de 1936.*

El Juez Asociado Señor Córdova Dávila no intervino.