Sucesión de Francisco Molina Varela, Etc., demandantes y apelados, *v.* Sociedad Protectora de los Niños Huérfanos de Río Piedras, demandada y apelante.

Núm. 8419.—*Sometido:* Febrero 4, 1943. *Resuelto:* Abril 28, 1943.

*Heriberto Torres Solá* y *Federico J. Pérez Almiroty,* abogados de la apelante; *Silvestre Cruz Disdier,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

La cuestión fundamental envuelta en este caso es si erró la corte sentenciadora al resolver que un procedimiento ejecutivo hipotecario es nulo por no haberse jurado la moción solicitando la citación por edictos de John Doe y Richard Roe como herederos desconocidos de Francisco Molina Valera, deudor hipotecario. Los hechos probados son los siguientes:

La Sociedad Protectora de los Niños Huérfanos de Río Piedras en el escrito inicial enmendado del mencionado ejecutivo sumario radicado en la Corte de Distrito de San Juan el 20 de junio de 1933 alegó que el deudor hipotecario Francisco Molina Varela falleció en Puerto Rico allá para el año 1928, hecho comprobado por la certificación de defunción, y que la demandante no sabía quiénes eran sus herederos ni

cuál era el paradero de los mismos. Expedido el auto d requerimiento el márshal requirió a doña Marta Hernánde como la persona que se encontraba frente a la finca hipote cada y en su cargo legal de encargada de la misma, haciend constar dicho funcionario en el diligenciamiento que no pud notificar a la Sucesión de Francisco Molina Varela por ig norar qué personas componían la misma, y el paradero d éstas. En agosto 14 de 1933 la demandante radicó una mo ción sobre publicación de edictos, sin jurar y sin estar acom pañada de *affidavit* de méritos, para que los herederos des conocidos fueran requeridos de pago mediante la publicació de edictos en el periódico "La Correspondencia" una vez po semana y por un término no menor de un mes. La cort dictó la orden correspondiente y se publicaron los referido edictos no en el periódico mencionado sino en "El País" Continuó en sus trámites el ejecutivo, se ejecutó y subastó l finca, adquiriéndola la acreedora hipotecaria el día 5 de di ciembre de 1934.

Cinco años más tarde la Sucesión de Francisco Molina Varela, compuesta de sus hijos, estableció esta acción de nulidad de procedimientos hipotecarios y reivindicación ale gando que el ejecutivo sumario a que nos hemos referido es nulo por los siguientes motivos:

"A—La corte ordenó el requerimiento de pago mediante un escrito inicial enmendando (sic) radicado mucho tiempo después de expedida por el Registrador de la Propiedad, la certificación que exige el Reglamento para darle jurisdicción a la corte para actuar en procedimientos ejecutivos hipotecarios.

"B—El procedimiento ejecutivo hipotecario se tramitó contra personas ficticias por alegarse que no se conocían los herederos de don Francisco Molina Varela, ya que a la ejecutante le constaba y al Márshal de esta Corte de igual modo, que la Corte de Distrito de San Juan había declarado quiénes eran y al notificarse a Marta Hernández en la casa donde vivía le informó al Márshal de quiénes eran los herederos.

"C—Que la publicación de edictos para la notificación no se hizo en virtud de declaración jurada exponiendo los méritos del caso, no

udiendo adquirir la corte jurisdicción sobre la supuesta sucesión esconocida.

"D—Que la publicación por edictos se hizo en periódico distinto el señalado por la corte en su orden de publicación.

"E—Que al ordenarse el remate de la finca hipotecada no hubo a previa tasación de la finca, a los efectos de la subasta que había le celebrarse de acuerdo con la ley vigente al tiempo de dictarse a orden de remate."

Practicada la prueba de la demandante, la demandada formuló una moción de *nonsuit* haciendo constar que sometía el caso sin prueba. La corte inferior en la opinión que dictó para sostener su sentencia declarando con lugar la demanda y nulo el procedimiento ejecutivo hizo constar que no se habían probado los motivos de nulidad "A" y "B", pero sí el "C", y que siendo éste suficiente para declararlo nulo no consideraba necesario resolver los marcados con las letras "D" y "E".

Apeló la demandada y en este recurso alega que la corte inferior erró al resolver que la Corte de Distrito de San Juan no adquirió jurisdicción sobre la Sucesión de Francisco Molina Varela en el ejecutivo sumario, cuya nulidad decretó, fundándose en que la moción solicitando la citación de los demandados mediante la publicación de edictos no está jurada.

El artículo 128, párrafo segundo, de la Ley Hipotecaria dispone lo siguiente:

"Se requerirá al deudor de pago si residiere en el lugar en que radica la finca y se supiere su domicilio; bastará en otro caso, que se requiera al que se halle al frente de la finca en cualquier concepto legal, a fin de que ponga en conocimiento del dueño la reclamación."

El párrafo cuarto del artículo 171 del Reglamento para la ejecución de dicha ley preceptúa que:

"Cuando quiera que el requerimiento de pago no se evacue en el domicilio de aquel a quien el pago incumba, ni tampoco se entienda con apoderado o arrendatario que tenga a su cargo la finca, se publicará además por medio de edictos, que se insertarán en la

834

*Gaceta* de la isla correspondiente, y en tal caso, el término de treinta días empezará a contarse desde la publicación en dicho periódico oficial.''

Y el último párrafo del artículo 176 de dicho Reglamento dice que:

"Las disposiciones de la Ley de Enjuiciamiento Civil vigentes en Cuba, Puerto Rico y Filipinas, serán aplicables a estos procedimientos como supletorias, en cuanto no se opongan a lo prescrito en la hipotecaria y en el presente reglamento.''

La corte inferior basándose en este último precepto y en el hecho de que esta Corte Suprema en. el caso de *Vázquez Vda. de McCormick* v. *Gutiérrez,* 52 D.P.R. 170, 175, dijo que la Ley de Enjuiciamiento Civil a que hace referencia el artículo 176, supra, ha sido suplantada por nuestro actual Código de Enjuiciamiento Civil, resolvió que era aplicable al caso de autos el artículo 94 de este último código que dispone que:

"Artículo 94.—Cuando la persona que deba ser citada resida fuera de la Isla, o se hubiere ausentado de ella, o si después de la debida diligencia no pudiere ser encontrada en la Isla, o se ocultare para que no pueda hacérsele la citación, cuando se ignorare su domicilio o si fuere una corporación extranjera sin gerente o agente comercial, cajero o secretario en la Isla, y así resultare comprobado a satisfacción de la corte o del juez de la misma. por medio de declaración jurada y apareciese también de dicha declaración, o de la demanda jurada presentada, que existe motivo de acción contra el demandado que ha de ser citado, o que dicho demandado es parte necesaria o legítima en el pleito, la corte o el juez puede dictar una orden disponiendo' que la citación se haga por la publicación de edictos.''

Y concluyó, como hemos dicho antes, que por no haberse jurado la moción la corte no adquirió jurisdicción y todo el procedimiento es nulo.

El caso de *Vázquez Vda. de McCormick* v. *Gutiérrez,* supra, no tiene el alcance que ha querido darle la corte sentenciadora. Expresamente se dijo a las páginas 175 y 176:

" . . . No nos detendremos ahora a considerar, sin la ayuda de letrados, la posibilidad de que algunas disposiciones del antiguo digo puedan considerarse que han continuado en vigor como plementarias de la Ley Hipotecaria y su Reglamento.

"La notificación de una petición enmendada al deudor hipotecario la forma provista por el Código de Enjuiciamiento Civil equival-ía a un absurdo. No existe un 'demandado' dentro del significado esa palabra, conforme la misma es usada en el Código de Enjui-miento Civil, a quien se pueda hacer la notificación. El deudor potecario, al ser notificado de una petición enmendada, no podría ntestar ni excepcionar a la misma."

De manera que no puede decirse que para todos los trá-ites supletorios sean aplicables indefectiblemente las dispo-ciones del vigente Código de Enjuiciamiento Civil. ¿Lo es artículo 94, supra? Somos de opinión que la pregunta debe ntestarse en la negativa.

Repetidamente ha resuelto esta corte y así lo admite la rte inferior, que el requerimiento de pago al deudor en un rocedimiento sumario hipotecario equivale a la notificación e una sentencia concediéndole treinta días para satisfacerla, *erales* v. *Corte*, 43 D.P.R. 902; *Arzuaga* v. *Corte*, 43 D.P.R. )01, 1007; ya que el auto de requerimiento que dicta la corte e acuerdo con el artículo 170 del reglamento, después de xaminar el escrito inicial y los documentos que a él deben compañarse "participa de la naturaleza de una sentencia or confesión sin celebración de juicio", *P. R. Leaf Tobacco 'o.* v. *Aldrey,* 13 D.P.R. 234; *Perales* v. *Corte,* supra, y *Váz-uez Vda. de McCormick* v. *Gutiérrez,* supra. En el recurso ubernativo de *González Martínez* v. *Registrador,* 39 D.P.R. 35, se resolvió, según aparece del sumario, que:

"En los ejecutivos sumarios hipotecarios, siendo la orden de equerimiento de pago un acto judicial que emana directamente del uez o la corte, a los funcionarios auxiliares de éste es a quienes ompete cumplimentarla."

En el caso de *Perales* v. *Corte,* supra, se resolvió que si ien el requerimiento "es semejante al emplazamiento, ya que or él se pone en conocimiento del deudor la existencia del

procedimiento judicial iniciado contra él, *pero ello no quie[*
*decir que ambos actos sean enteramente iguales y deben v[*
*rificarse con las mismas formalidades"*, y después de citar[
el artículo 176 del Reglamento, supra, se procedió a exam[
nar no los artículos del Código de Enjuiciamiento Civil v[
gente, sino los artículos 275 y 262 de la Ley de Enjuici[
miento Civil Española y los Comentarios de Manresa a l[
mismos, para concluir que no era necesario entregar cop[
de la escritura en que se constituyó la hipoteca al efectuar[
el requerimiento al deudor y se dijo que " . . . no deben l[
tribunales por errores leves que no afecten los derechos sub[
tanciales de las partes anular procedimientos que de hecl[
y de derecho son en verdad enteramente válidos".

Si la orden de requerimiento de pago es un acto judici[
que emana directamente del juez o la corte por haberse co[
vencido que el escrito inicial y los documentos que lo, acor[
pañan cumplen con todos los requisitos legales y dicha ord[
se dicta "sin más trámites" como dice el artículo 170 del r[
glamento, la orden sobre publicación de edictos, una vez d[
vuelto el auto diligenciado en forma legal por el mársha[
podría emanar del juez o la corte sin necesidad de moció[
alguna.

Nada hemos podido encontrar en la Ley de Enjuici[
miento Civil Española ni en nuestra Ley Hipotecaria y s[
Reglamento que exija que el escrito inicial en el ejecutiv[
sumario o la moción para que se publiquen los edictos d[
citación tengan que ser jurados por el acreedor reclamant[
Siendo esto así, no puede sostenerse que sea un requisito ju[
risdiccional previo que se jure la moción solicitando se r[
quiera de pago a las personas desconocidas que componen l[
sucesión de un deudor hipotecario según requiere el artícul[
94 del Código de Enjuiciamiento Civil, supra, para el empla[
zamiento por edictos del demandado en un caso civil corrient[

█ El juez sentenciador por la conclusión a que llegó e[
cuanto al motivo "C", supra, se abstuvo de resolver los m[

vos de nulidad "D" y "E" alegados en la demanda. La pelante en su alegato se abstiene de discutir dichos motivos, osteniendo que debemos devolver el caso a la corte de origen para que tenga la oportunidad de pasar en primera insancia sobre los mismos. No tiene razón a nuestro juicio pues todas las cuestiones fueron planteadas a dicha corte originalmente y están ante nos a virtud de este recurso. Así o hicimos constar al denegar un auto de certiorari en este mismo caso, *La Sociedad Protectora de Niños, etc.* v. *Corte,* 58 D.P.R. 443, cuando dijimos que remitíamos a las partes "a la apelación pendiente para que se dicte allí la que proceda, considerando todos los motivos de nulidad alegados en la demanda".

En cuanto al motivo de nulidad marcado con la letra "D", que se refiere al hecho de haberse publicado los edictos en un periódico distinto al mencionado en la orden de la corte, somos de opinión que, aunque es una práctica que no debe seguirse, a lo sumo constituye una irregularidad que no conlleva la nulidad del procedimiento. Lo importante es que en efecto se hayan publicado los edictos y este hecho quedó comprobado en el presente caso. *De Jesús* v. *Colón,* 51 D. P.R. 384; *Federal Land Bank* v. *León,* 56 D.P.R. 887.

Por último, se alega en la letra "E" que el ejecutivo sumario es nulo porque al ordenarse el remate de la finca hipotecada no se hizo la tasación previa de la misma.

Del escrito inicial en dicho procedimiento aparece que la hipoteca fué constituída el día 11 de noviembre de 1924 y que el propio ejecutivo se inició el 12 de septiembre de 1932, celebrándose la subasta el 28 de marzo de 1934. Tenemos, por lo tanto, que a la fecha de otorgarse la escritura en que se constituyó la hipoteca en el 1924 todavía no estaba en vigor la Ley 69 aprobada el 1º de mayo de 1931 (pág. 433) enmendando el artículo 127 de la Ley Hipotecaria requiriendo que en la escritura de hipoteca se haga constar el precio en que tasan la finca los contratantes para que sirva de tipo a.

la primera subasta, habiéndose resuelto por esta corte en caso de *Iglesias* v. *Registrador,* 43 D.P.R. 19, que dicha le era solamente aplicable a escrituras que se otorgaran con posterioridad a la fecha en que dicha ley empezó a regir.

Asimismo en el caso de *Emanuelli* v. *Corte,* 49 D.P.R. 775, resolvimos que en cuanto a hipotecas constituídas de pués de la aprobación de la Ley núm. 69 de 1931 si no const la tasación del inmueble hipotecado en la escritura "el acre dor no estaría en condiciones de ejecutar su crédito por l vía sumarísima".

Ahora bien, el artículo 175 del Reglamento de la Ley H potecaria en uno de sus párrafos dispone que:

"Los acreedores que tengan inscrito su derecho con anterioridad a la ley vigente podrán optar por este procedimiento sumario; má cuando los títulos de sus créditos no expresen la conformidad de deudor con un precio determinado para la subasta, habrán de acre ditar esta conformidad, consignada en documento público, o pedi el justiprecio, con arreglo a la Ley de Enjuiciamiento Civil, para preparar el anuncio de la subasta; entendiéndose siempre aplica bles las reglas de esta sección, que señalan el tipo mínimo para salvaguardar las responsabilidades preferentes. Las diligencias para el nombramiento de perito se practicarán al verificarse el requeri-miento de pago y se entenderán con las mismas personas con quienes aquél deba formalizarse."

Este párrafo fué interpretado por esta corte en el caso de *Henna* v. *Saurí & Subirá,* 22 D.P.R. 836 en el sentido de que se refería a aquellas escrituras de hipotecas otorgadas con anterioridad al año 1893 que no estipulaban determinada valoración de la finca.

Por la Ley núm. 81 aprobada en mayo 13 de 1936 ((1) pág. 433) se enmendó otro párrafo del artículo 175, supra, la cual enmienda no afectó el párrafo anteriormente transcrito y entonces esta corte, interpretando tanto la Ley 69 de 1931, supra, como la 81 de 1936, resolvió en el caso de *Cotto* v. *Corte,* 52 D.P.R. 567, 569, lo siguiente:

"Antes de 1893 un acreedor hipotecario no necesitaba hacer una previa tasación o valoración de la propiedad en la escritura. Sin

embargo, el artículo 127 de la Ley Hipotecaria de 1893 disponía que se hiciera tal tasación, y el artículo 175 del Reglamento proveía la manera de subsanar tal omisión en las hipotecas constituídas con anterioridad a dicho estatuto si las mismas iban a ser ejecutadas sumariamente. Entonces vino la ley de marzo 9, 1905 (Comp. 5295–5303), y prescribió la forma en que se debían satisfacer las sentencias. Desde 1905 hasta ·1931 era innecesario que los acreedores garantizados y los deudores acordaran en la escritura de hipoteca, o posteriormente, el precio que debía fijarse a la propiedad hipotecada. En 1931 la Legislatura aprobó la Ley núm. 69 de 1931 (Leyes de ese año, pág. 433), que reenactó el artículo 127 de la Ley Hipotecaria en el sentido de exigir nuevamente que en las escrituras de hipoteca se hiciera constar el valor que debía. fijársele a las fincas en la primera subasta, y lo enmendó en el sentido de exigir más de una subasta. Como resultado de esta ley, que este tribunal, en el caso de *Iglesias* v. *Registrador*, 43 D.P.R. 19, *decidió era prospectiva,* se resolvió más tarde que si se otorgaba una hipoteca *con posterioridad a la aprobación de esa ley,* sin hacer constar el valor de la finca, el único remedio del acreedor era acudir a un pleito ordinario en ejecución de hipoteca y que estaba impedido de recurrir al procedimiento sumario. *Emanuelli* v. *Corte de Distrito,* 49 D.P.R. 775.'' (Bastardillas nuestras.)

'' *       *       *       *       *       *       *

. ''Hemos leído cuidadosamente las leyes de 1931 y 1936 e interpretado su aprobación en el sentido de expresar la intención legislativa de poner en vigor un sistema completo para la valoración de propiedades antes de su venta, en forma algo similar a la existente entre 1893 y 1905. Creemos que la ley de 1936 comprende *toda hipoteca inscrita* con anterioridad a su aprobación. Además, somos del criterio de que la ley es retroactiva y que meramente afecta el procedimiento a seguirse en el ejecutivo sumario, *cuando la escritura no expresa el precio mínimo en que debe venderse la finca en la primera subasta.* Tal interpretación conduce a que se establezca un procedimiento uniforme para todos los ejecutivos sumarios.'' (Bastardillas nuestras.)

Solicitada la reconsideración de este caso se denegó, *Cotto* v. *Corte,* 53 D.P.R. 367, diciéndose, sin embargo, en la opinión lo siguiente:

''Nos damos cuenta del peso de los argumentos presentados por la peticionaria. No obstante, la ley de 1936, supra, aunque se inti-

tulaba enmienda, fué, con una alteración sin importancia, sustancial mente una reenacción del artículo 175 del Reglamento para la ejecución de la Ley Hipotecaria conforme el mismo ya existía en los estatutos. Así pues, la legislatura demostró una vez más su inten ción de que el justiprecio de la finca era un requisito previo indis pensable al procedimiento ejecutivo sumario.

"Es cierto que la peticionaria llama nuestra atención hacia el hecho de que según el caso de *Henna* v. *Saurí & Subirá*, 22 D.P.R. 836, 848, este tribunal interpretó el artículo 175, supra, como que se refería tan sólo a las escrituras de hipoteca otorgadas con ante rioridad al 1893. Empero, dadas las leyes de 1931 y 1936, no pode mos llegar a otra conclusión que no sea la de que la legislatura tuvo la intención de dar al artículo 175, según fué enmendado, un alcance mayor. Este artículo *restablece el remedio sumario* a aquellas hipotecas que caen bajo nuestra decisión en el caso de *Emanuelli* v. *Corte,* 49 D.P.R. 775.

" *      *      *      *      *      *      *

"La peticionaria llama nuestra atención hacia la dificultad que podría surgir para los acreedores hipotecarios que han *ejecutado* sus gravámenes *con posterioridad* a 1936 en cobro de hipotecas otor gadas *con anterioridad* a 1931 y que procedieron bajo la asunción de *que el justiprecio era innecesario.* Tenemos la idea de que esos casos serán relativamente pocos y no se encuentran claramente ante nos. Es posible que semejantes hipotecas pudieran estar protegidas por el principio de *stare decisis* aunque no se nos ha pedido que hagamos tal declaración. *Cuanto dijimos en sentido contrario en nuestra opinión principal debe interpretarse a la luz de la anterior posibilidad, de ser la doctrina de stare decisis aplicable."* (Bastar dillas nuestras.)

La situación de hechos en el caso de autos es distinta a la que confrontó esta corte en el caso de *Cotto,* supra. Allí se ejecutó sumariamente, después de reenactado en el 1936 el artículo 175 del reglamento, una hipoteca otorgada con anterioridad a 1931 en la que no se había tasado la finca y se resolvió que para no hacer nulo el procedimiento debía cumplirse con las disposiciones del mencionado artículo 175 y hacerse la tasación antes de procederse a la venta. En la opinión dictada en reconsideración específicamente se dijo que en cuanto a aquellos casos en los que los acreedores que

ya habían ejecutado sus gravámenes *con posterioridad* a 1936 en cobro de hipotecas otorgadas *con anterioridad* a 1931, sin haberse llenado el requisito del justiprecio, la decisión debería interpretarse a la luz de la posibilidad de ser la doctrina de *stare decisis* aplicable.

Somos de opinión que el caso de autos en el que la hipoteca fué otorgada con anterioridad a 1931 y ejecutada sumariamente también con anterioridad a 1936, es decir, antes de la interpretación que se le dió en el caso de *Cotto* v. *Corte,* supra, a las leyes 69 de 1931 y 81 de 1936, debe regirse por la doctrina de *stare decisis,* es decir, a la luz de lo resuelto en el caso de *Henna* v. *Saurí & Subirá,* supra, al efecto de que no era un obstáculo para poder acudir al ejecutivo sumario el hecho de no haberse convenido en la escritura la tasación de la finca para la subasta y que el artículo 175 se refiere tan solo a las escrituras otorgadas antes de 1893, y, siendo ello así, hay que concluir que tampoco existe el motivo de nulidad "E" alegado por los apelados.

*Debe revocarse la sentencia apelada y dictarse otra declarando sin lugar la demanda, con costas.*

El Juez Asociado Sr. De Jesús no intervino en la decisión.