CAMILA FUENTES Y OTROS, demandantes y recurridos, *v.* SUCESIÓN DE FRANCISCA FUENTES Y ENCARNACIÓN FUENTES VDA. DE SUÁREZ, demandados y recurrentes los segundos; CAMILA FUENTES Y OTROS, demandantes y recurridos, *v.* LA SUCESIÓN DE FRANCISCA FUENTES, ETC., Y JUAN AGUILÓ FORTEZA, demandados y recurrente el último.

*Números:* R-63-60, R-63-61     *Resueltos:* 31 de mayo de 1967

590

*Víctor Gutiérrez Franqui, Federico Ramírez Ross, Carlos G. Látimer, Luis Fernández Ramírez y Ramírez, Segal & Látimer,* abogados de los recurrentes; *R. R. Rivera Correa,* abogado de los recurridos; *Ángel Roberto Díaz,* abogado de Juan Aguiló Forteza; *Víctor A. Coll,* abogado de Juan Suárez y Johnny Suárez Miranda, recurrentes.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

El Juez Asociado Señor Blanco Lugo emitió la opinión del Tribunal.

Dos son las cuestiones básicas que se plantean en estos recursos: (a) la condición de tercero hipotecario protegido por las disposiciones del Art. 34 de la Ley Hipotecaria, 30 L.P.R.A. sec. 59,(1) que reclama el Padre Juan Aguiló For-

---

(1) "No obstante lo declarado en el artículo anterior, los actos o contratos que se ejecuten u otorguen por persona que en el registro aparezca con derecho para ello, no se invalidarán en cuanto a tercero, una vez inscritos, aunque después se anule o resuelva el derecho del otorgante en virtud de título anterior no inscrito o de causas que no resulten claramente del mismo registro.

"Solamente en virtud de un título inscrito podrá invalidarse, en perjuicio de tercero, otro título posterior también inscrito, salvo lo dispuesto en el art. 389.

"Lo dispuesto en este artículo no será aplicable en ningún tiempo al título inscrito con arreglo a lo prevenido en el art. 390, a menos que la prescripción haya convalidado y asegurado el derecho a que se refiere dicho título."

teza; y, (b) la validez del procedimiento ejecutivo sumario seguido por don Marcial Suárez y su esposa doña Encarnación Fuentes en cobro de un crédito hipotecario constituido por Pascasio Fuentes López, causante de los demandantes, sobre dos fincas rústicas sitas en Loíza.

## I

Como consecuencia de la adjudicación habida en el procedimiento ejecutivo seguido por los acreedores señores Suárez Fuentes, el Registrador de la Propiedad extendió, en 28 de mayo de 1936, la inscripción tercera de la finca Núm. 845 del término de Loíza, que en su parte pertinente lee así:

"3a. *Rústica*: en el barrio Medianía Alta de Loíza, descrita en la inscripción primera, como en el documento presentado. Se halla afecta a la hipoteca comprendida en la inscripción segunda que será cancelada por la presente. Pascasio Fuentes López, *siendo viudo*, adquirió esta finca, por la inscripción segunda. En el caso civil veinte y un mil quinientos veinte y seis, seguido en la Corte de Distrito del Distrito Judicial de San Juan, por Marcial Suárez Suárez y su esposa Encarnación Fuentes, mayores de edad, propietarios, vecinos de Loíza, *contra John Doe y Richard Roves, como herederos desconocidos de Pascasio Fuentes López,* en cobro de crédito hipotecario, *habiéndose requerido de pago la persona que se hallaba al frente de los bienes hipotecados, o sea Francisca Fuentes, una hija del llamado Pascasio Fuentes López,* para que dentro del plazo de treinta días, a partir de la fecha del requerimiento, . . . hiciera efectivo el crédito hipotecario reclamado; y habiendo vencido el plazo fijado, sin que los demandos satisficieran las sumas reclamadas en el procedimiento . . . . En su virtud inscribo el dominio de la finca de este número, a favor de Marcial Suárez Suárez . . . ."

El tribunal de instancia concluyó que los sucesivos adquirentes, y específicamente el actual dueño y poseedor Padre Juan Aguiló Forteza, no eran terceros hipotecarios a quienes aprovechaba la protección registral fundándose en que el

592

motivo de nulidad del procedimiento ejecutivo—la falta de publicación de edictos en un periódico de circulación requiriendo de pago a los herederos desconocidos del deudor hipotecante—surge claramente de la anterior inscripción.[2] Sostienen los recurrentes, por su parte, que el Padre Aguiló tiene tal condición porque el contrato de compraventa mediante el cual adquirió el título sobre ambas fincas se otorgó por persona que en el registro aparecía con derecho para ello y que las causas para la anulación o resolución del derecho del transmitente no resultan claramente del mismo registro.

Es preciso hacer una reseña de los hechos que son pertinentes para disponer de este planteamiento. El Padre Aguiló adquirió los inmuebles mediante la escritura Núm. 12 de fecha 10 de julio de 1958 ante el Notario Ángel Roberto Díaz. Para esa fecha no figuraban inscritos a nombre de los vendedores Francisco Garay Cruz y sus hijos Gustavo Adolfo y César Augusto Garay Fuentes, sino a nombre de su causante doña Francisca Fuentes de Garay, quien a su vez los hubo de los acreedores ejecutantes esposos Suárez Fuentes. No es hasta el 26 de octubre de 1959 que se presenta el título de los Garay para inscripción, lo que se verifica el 15 de diciembre siguiente. Ya para el 10 de julio de 1958, para ser exactos el día 7 anterior, se había iniciado el pleito sobre nulidad del ejecutivo sumario, *y en la misma fecha* se había presentado para anotación una solicitud de *lis pendens* que quedó finalmente anotada en 24 de noviembre de 1958.

De lo antes expuesto se obtienen las siguientes consecuencias: (1) cuando el Padre Aguiló compró, (a) las fincas no figuraban inscritas a nombre de sus transmitentes inmediatos, sino del causante de éstos; (b) ya en el ámbito registral se había presentado para despacho un documento que afectaba el título que se le transmitía; y (2) cuando se inscribió el

_____

[2] En la inscripción 3a. de la otra finca hipotecada se hace referencia expresamente a la que ya transcribimos precedentemente.

título del Padre Aguiló en 15 de diciembre de 1959, figuraba anotado el aviso de la demanda de los recurridos. [3]

██ De la relación anterior aparece claramente que cuando se otorgó la escritura de compraventa a favor del Padre Aguiló en 10 de julio de 1958, ya desde tres días antes se había presentado para anotación el aviso de la demanda de los recurridos en la cual se hacían las alegaciones sobre las causas de nulidad del título. Había ingresado en el ámbito registral la reclamación que proyectaba una sombra sobre el título del transmitente de quien reclama la protección de tercero hipotecario. *Zalduondo* v. *Iturregui*, 83 D.P.R. 1, 34-35 (1961). En estas circunstancias tal protección le está vedada. [4]

██ Para eludir las consecuencias de la situación registral reseñada reclama el Padre Aguiló que aunque el contrato de compraventa se elevó a escritura pública el 10 de julio, el acuerdo de voluntades sobre el objeto y la causa había tenido lugar el 5 de junio anterior. Es cierto que la prueba demuestra que desde dicha fecha el comprador tomó inmediata posesión

---

[3] Conviene advertir que la acción de nulidad se inició en 7 de julio de 1958 y que se incluyó como parte demandada al comprador desconocido de las fincas, que por información se identificó como "La Iglesia Católica de la Guadalupe", de la cual era párroco el recurrente Padre Aguiló; que en 11 de agosto se presentó una demanda enmendada en la cual se hizo parte al Padre Aguiló y que éste fue emplazado al siguiente día.

Resulta, por tanto, que a la fecha en que el Padre Aguiló presentó su título para inscripción ya tenía conocimiento personal de la existencia de los motivos de nulidad alegados.

[4] Es doctrina consistentemente reiterada que no es tercero hipotecario aquél que ha adquirido título de persona que, a la fecha de su otorgamiento, no aparece en el Registro con derecho para otorgarlo. *Monserrate* v. *Lopés*, 80 D.P.R. 491, 503 (1958); *Pérez* v. *Cancel*, 76 D.P.R. 667, 676 (1954); *Olmedo* v. *Balbín*, 69 D.P.R. 588, 592 (1949). En vista de la situación registral descrita no es necesario que resolvamos si esta doctrina es aplicable en el presente caso en que si bien el título no aparecía inscrito a favor de los transmitentes inmediatos, lo estaba a nombre de la causante de éstos.

de las fincas y realizó actos de pleno dominio, como la prestación de fianzas para la instalación de servicios públicos, el inicio de obras para levantar edificaciones, la utilización de los inmuebles para actividades de recreo con el fin de allegar fondos para la parroquia que él regenteaba. Mas todo esto no es pertinente. La condición de tercero tiene que juzgarse aquí considerando la fecha cierta del título de adquisición, que es el que puede oponerse a las reclamaciones de otras personas que no hubieran intervenido en el contrato, y siempre fundando el derecho en un título inscrito para poder disfrutar del beneficio o excepción del Art. 34 bajo el supuesto de que la causa de nulidad no conste claramente en la inscripción anulada. *Lizardi* v. *Caballero*, 65 D.P.R. 83, 89 (1945).

Bajo las circunstancias apuntadas huelga que determinemos si la causa de nulidad o el defecto surgía claramente o constaba explícitamente del registro. Véanse, *Rubio Sacarello* v. *Roig*, 84 D.P.R. 344, 354–357 (1962); *Rodríguez* v. *Sucn. Pirazzi*, 89 D.P.R. 506 (1963), y especialmente, *Menéndez* v. *Cobb, et al.*, 28 D.P.R. 775, 780 (1920).

## II

Desprovisto el Padre Aguiló de la protección de la Ley Hipotecaria, sólo ostenta la condición de tercero civil. Precisa pues examinar si el título de sus transmitentes estaba afecto de nulidad, irrespectivamente de que tuviere conocimiento de ello.

En 1ro. de septiembre de 1934 el acreedor hipotecario don Marcial Suárez incoó acción en ejecución de su crédito por la vía sumaria contra John Doe y Richard Roves, herederos desconocidos de Pascasio Fuentes López, de ignorado domicilio. En el hecho cuarto del escrito inicial hízose constar el fallecimiento del deudor hipotecante, "dejando algunos herederos cuyos nombres y domicilios ignoran los demandantes, pero estando al frente de las dos fincas hipotecadas al presente

Francisca Fuentes". Termina el escrito con la súplica de que se requiera de pago a dichos demandados o en su defecto a la persona o personas que estuvieren en posesión o al frente de dichas fincas hipotecadas. La orden de requerimiento autoriza al alguacil, vistos los Arts. 128 de la Ley Hipotecaria y 169 y 170 del Reglamento, para que requiera a John Doe y Richard Roves, herederos desconocidos de Pascasio Fuentes López, o en su defecto a la persona que se hallare al frente de los inmuebles hipotecados.

El aviso de requerimiento se dirigió a John Doe y Richard Roves, herederos desconocidos de Pascasio Fuentes López y a Francisca Fuentes, personas que se dice estar al frente de las fincas hipotecadas. El diligenciamiento del alguacil expresa que requirió personalmente a Francisca Fuentes "que es la persona que actualmente se halla al frente de la finca hipotecada en su carácter de condueña de dicha finca y como heredera de la sucesión de Pascasio Fuentes López". Certificó además dicho funcionario que en la misma fecha del requerimiento había fijado copias del mismo en la tabla de anuncios de la Corte de Distrito de San Juan, en el edificio de la alcaldía de Canóvanas y en una casa tienda enclavada en unas de las fincas objeto de ejecución.

No se publicaron edictos para notificar a los herederos desconocidos.

Dictada la orden de venta, y celebrado el remate correspondiente, las fincas fueron adjudicadas en 24 de diciembre de 1934 (⁵) a los acreedores ejecutantes por mil dólares una y quinientos la otra, cuya suma fue abonada al importe mayor del crédito. La venta judicial se elevó a escritura pública mediante la Núm. 1 de 24 de enero de 1935 ante el Notario don Fulgencio Piñero. En la misma fecha y ante el mismo notario, por la Núm. 2, los acreedores adjudicatarios esposos

---

(⁵) La declaración sobre la publicación de los edictos fue suscrita en 22 de diciembre pero autenticada y jurada cuatro días después, el 26, cuando ya se había celebrado la subasta.

Suárez-Fuentes vendieron las fincas por "precio recibido", igual a la suma de la adjudicación, a doña Francisca Fuentes.

El Art. 128 de la Ley Hipotecaria, 30 L.P.R.A. sec. 224, y el Art. 171 del Reglamento, 30 L.P.R.A. sec. 1092, constituyen la ley positiva aplicable a las diligencias judiciales anteriores a la celebración de la subasta, y más específicamente, a la notificación del requerimiento de pago. En la parte que es pertinente rezan:

Art. 128.—"Se requerirá al deudor de pago si residiere en el lugar en que radica la finca y se supiere su domicilio; bastará en otro caso que se requiera al que se halle al frente de la finca en cualquier concepto legal, a fin de que ponga en conocimiento del dueño la reclamación."

Art. 171.—Cuando todos los bienes hipotecados estén en manos de un solo poseedor, según la certificación del registro, el requerimiento de pago se entenderá con él en su domicilio si reside en el término municipal donde radique alguno de dichos bienes. Esto mismo se practicará respecto de cada cual de los poseedores de los distintos bienes, cuando fueren varios. Cuando alguno de los que hayan de ser requeridos de pago no residiere en término municipal donde radique alguno de los bienes, el requerimiento se entenderá con la persona que se halle al frente de la finca en cualquier concepto legal, a fin de que lo ponga sin dilación en conocimiento del dueño. Si la finca estuviese abandonada, de modo que nadie la tenga a su cargo, el requerimiento se entenderá con la autoridad municipal administrativa del pueblo, con igual encargo de comunicarlo al deudor.

Cuando el dominio de algunos inmuebles hipotecados estuviese dividido por hallarse en una persona la propiedad o el dominio directo, y en otra el usufructo o el dominio útil, para el requerimiento se reputará poseedor en nombre de todos al que se hallare encargado de la finca, o a quien en ella haga sus veces.

Si alguna persona a quien se deba requerir de pago figura en la certificación del registro como poseedora de varios bienes hipotecados y el requerimiento se ha de evacuar con el encargado o la autoridad municipal, se atenderá tan sólo al inmueble que,

entre los poseídos por la misma persona, conste en la escritura con mayor valor o a cualquiera de los que, teniéndole igual, superen el valor de los demás. En defecto de evaluación, se atenderá a la cuantía de la responsabilidad hipotecaria.

Cuando quiera que el requerimiento de pago no se evacue en el domicilio de aquel a quien el pago incumba, ni tampoco se entienda con apoderado o arrendatario que tenga a su cargo la finca, se publicará además por medio de edictos, que se insertarán en la Gaceta de la isla correspondiente, y en tal caso, el término de treinta días empezará a contarse desde la publicación en dicho periódico oficial.

Cuando en las certificaciones del registro de la propiedad consten los domicilios de las personas interesadas en las responsabilidades que se hubieran inscrito después del derecho del actor, el juez mandará, a la vez que el requerimiento de pago, que se intente la notificación del auto a dichas personas interesadas en aquellos domicilios si en ellos fueren habidas."

■ Un análisis de ambas disposiciones revela que el legislador estableció unas normas para la notificación del requerimiento de pago dependiendo del hecho del domicilio del deudor. Pueden resumirse así: (a) cuando el deudor reside en el lugar en que radica la finca y su domicilio es conocido, con él personalmente deberá entenderse el requerimiento; (b) cuando el deudor no residiere en el término municipal en que radique alguno de los bienes, a la persona que se halle al frente de la finca en cualquier concepto legal, *Mestre et al.* v. *Michelena et al.*, 30 D.P.R. 148 (1922); (c) cuando en este último supuesto nadie tuviere la finca a su cargo, por encontrarse abandonada, al alcalde del pueblo; y, (d) cuando el requerimiento no se hiciere en el domicilio del deudor ni al apoderado o arrendatario que tenga a su cargo la finca, se publicará *además* por medio de edictos.

■ Ahora bien, la situación a que nos enfrentamos contiene un elemento no previsto en lo anteriormente expuesto, a saber, el fallecimiento del deudor hipotecante. Tiénese dicho expresamente por este Tribunal que las disposiciones le-

gales transcritas precedentemente no se refieren al caso en que el deudor ha fallecido, sino a aquellos en que el deudor no reside en el término municipal en que la finca hipotecada radica. *Santiago* v. *Registrador*, 72 D.P.R. 57, 61 (1951); *Santos* v. *Registrador*, 60 D.P.R. 135 (1942); *Sucn. González* v. *Federal Land Bank*, 51 D.P.R. 469 (1937); *Arvelo et al.* v. *Banco Ter. y Ag. de P.R.*, 25 D.P.R. 728 (1917). En la opinión emitida en el caso de *Arvelo*, supra, dijimos expresamente a la pág. 736:

"Como se ve, siendo Hilario Arvelo, según el registro, dueño de la finca hipotecada . . . con él por precepto terminante de la ley debía entenderse el requerimiento de pago, si residía en el barrio de Jayuya del término municipal de Utuado en que radicada la finca y se sabía su domicilio; pero habiendo ocurrido la muerte de Arvelo antes de iniciarse el procedimiento sumario hipotecario, ¿se estaba en el caso de requerir de pago al que se hallare al frente de la finca en cualquier concepto legal? Opinamos que no."

En estos casos los herederos del deudor deben ser requeridos de pago personalmente, pero si ello no pudiere hacerse por ignorarse su identidad o domicilio, no puede notificarse a la persona al frente de la finca en cualquier concepto legal, sino que debe recurrirse al medio de publicación de edictos. Muñoz Morales, *Lecciones de Derecho Hipotecario*, tomo II, pág. 210. *Sucn. Molina* v. *Soc. Protectora de Niños*, 61 D.P.R. 830 (1943), no se opone a lo ya expuesto; admite tácitamente que cuando se trata del requerimiento de pago a herederos desconocidos debe hacerse mediante la publicación de edictos, sólo que para ello—por no tratarse propiamente de un emplazamiento sino que participa de la naturaleza de una sentencia por confesión sin la previa celebración del juicio—no es necesario seguir el trámite prescrito en el Art. 94 del anterior Código de Enjuiciamiento Civil, que corresponde a la vigente Regla 4(e), y, específicamente, que el hecho no tiene

que acreditarse previamente mediante declaración jurada. (⁶) Véase F. Pérez Almiroty, *Aplicabilidad del Artículo 94 del Código de Enjuiciamiento Civil de Puerto Rico al Procedimiento Ejecutivo Hipotecario por la Vía Sumaria*, 14 Rev. Jur. U.P.R. 203 (1945). En ese sentido tampoco es de aplicación *Bermúdez* v. *Registrador*, 70 D.P.R. 834 (1950).

En el presente caso es inexplicable la omisión de citar a los herederos, no ya mediante la publicación de edictos, sino personalmente. Cuando menos los ejecutantes conocían a Francisca Fuentes, una de las hijas del finado, y fácil hubiera sido determinar la existencia de los otros herederos, sus hermanos aquí demandantes. Pero si esto no fuera suficiente, del propio certificado de defunción del deudor hipotecante que los acreedores ofrecieron en evidencia para acreditar su fallecimiento, ocurrido el 18 de julio de 1934, unos cuarenta días antes de la presentación del escrito inicial en el procedimiento ejecutivo sumario, aparecía información que proporcionaba los medios para determinar la identidad de los herederos, pues se indica que los datos sobre el finado y la defunción fueron suministrados por Isabelo Fuentes, con residencia en la Calle Varas núm. 2 de Santurce. Isabelo Fuentes, hijo del deudor, es uno de los demandantes.

■ No erró el tribunal de instancia al anular el procedimiento ejecutivo sumario en cuanto a siete octavas partes de las fincas debido a la omisión de notificar por edictos a los herederos del deudor.

---

(⁶) El Art. 379 (4) del proyecto de Código Hipotecario de Puerto Rico, P. del S. 604 de la Quinta Asamblea Legislativa, dispone al igual que lo hacía el Art. 94 que "Cuando la persona a ser requerida . . . hubiera fallecido desconociéndose los nombres y residencias de sus herederos . . . y así se comprobare a satisfacción del Tribunal mediante declaración jurada o de cualquier otro modo auténtico o fehaciente, el Tribunal ordenará que el requerimiento de pago se verifique por edicto librado por su secretario y publicado en un periódico de circulación general, que designe el Tribunal, una vez por semana durante cuatro semanas consecutivas. . .".

*Se confirmará la sentencia enmendada dictada en 7 de febrero de 1963 y se devolverá el caso para ulteriores procedimientos relacionados con la dilucidación de la demanda contra coparte presentada por el Padre Juan Aguiló.* ([7])

---

([7]) El planteamiento de los recurrentes Suárez-Fuentes sobre la improcedencia de dictar sentencia en su contra es intrascendente en vista de que lo único que podría perjudicarlas es el pronunciamiento relacionado con el pago de las costas y del examen de los autos originales aparece que los demandantes victoriosos no presentaron memorandum de costas.

En vista de que confirmamos la sentencia que tienen como consecuencia la evicción parcial de las fincas, resulta académico el apuntamiento sobre la prematuridad de la demanda contra coparte del Padre Aguiló contra los codemandados y los señores Suárez Fuentes en la cual se reclama el saneamiento conforme a la ley.