Dolores Cotto Vargas, peticionaria, *v.* Corte de Distrito de Guayama, Hon. R. Cordovés Arana, Juez, demandada.

Núm. 1117.—*Resuelto:* Junio 24, 1938.

*M. Guzmán Texidor,* abogado de la peticionaria; *C. Domínguez Rubio* y *L. Domínguez Rovira,* abogados del interventor, demandante en el pleito principal.

El Juez Asociado Señor Wolf emitió la opinión del tribunal.

En enero 28, 1938, emitimos una opinión en este caso en que resolvimos, sustancialmente, que la Ley núm. 81 de 1936 (leyes de ese año, pág. 433) era aplicable a todas las hipotecas independientemente de la fecha en que se otorgó la escritura, y fijaba un procedimiento uniforme para la ejecución sumaria de gravámenes hipotecarios. Dijimos:

"Hemos leído cuidadosamente las leyes de 1931 y 1936 e interpretado su aprobación en el sentido de expresar la intención legislativa de poner en vigor un sistema completo para la valoración de propiedades antes de su venta, en forma algo similar a la existente entre 1893 y 1905. Creemos que la Ley de 1936 comprende toda hipoteca inscrita con anterioridad a su aprobación. Además, somos del criterio de que la ley es retroactiva y que meramente afecta el procedimiento a seguirse en el ejecutivo sumario, cuando la escritura no expresa el precio mínimo en que debe venderse la finca en la primera subasta. Tal interpretación conduce a que se establezca un procedimiento uniforme para todos los ejecutivos sumarios."

El acreedor hipotecario afectado por nuestra decisión ha radicado una moción para reconsiderar. Señala quince motivos por los cuales trata de convencer a este tribunal de lo acertado de su posición.

De los muchos motivos aducidos, el primero, tercero, quinto, duodécimo y décimocuarto son, a nuestro juicio, los únicos importantes.

El primer motivo se refiere al efecto legal que debe darse a la Ley núm. 81, supra. El acreedor sostiene, al igual

que sostuvo en su alegato original, que el estatuto ya mencionado meramente enmendaba el artículo 175 del Reglamento para la Ejecución de la Ley Hipotecaria, que por ende tan sólo a aquella parte o frase que fué realmente agregada debe dársele efecto independiente, y que no importa el alcance que el resto del artículo mismo pueda haber tenido antes de tal enmienda, el mismo no debe ser por ella afectado. Da énfasis al hecho de que antes de la existencia de la Ley núm. 81, supra, el artículo 175 del Reglamento había sido interpretado por este tribunal en el sentido de que tenía aplicación definida que en algunos respectos era muy amplia y en otros muy limitada. Sostiene que ese artículo lee, a no ser por la enmienda que más tarde discutiremos, exactamente como leía en 1893. A todo lo que el artículo decía originalmente sobre las tres situaciones en que se podía suspender el procedimiento ejecutivo sumario y a sobre cómo por otra parte debe acudirse a la acción plenaria correspondiente, se le ha dado pleno alcance en nuestros tribunales.

El penúltimo párrafo del artículo ha de ser considerado. Leía y aún lee como sigue:

"Los acreedores que tengan inscrito su derecho con anterioridad a la ley vigente podrán optar por este procedimiento sumario; mas cuando los títulos de sus créditos no expresen la conformidad del deudor con un precio determinado para la subasta, habrán de acreditar esta conformidad, consignada en documento público, o pedir el justiprecio, con arreglo a la Ley de Enjuiciamiento Civil, para preparar el anuncio de la subasta; entendiéndose siempre aplicables las reglas de esta sección, que señalan el tipo mínimo para salvaguardar las responsabilidades preferentes. Las diligencias para el nombramiento de perito se practicarán al verificarse el requerimiento de pago y se entenderán con las mismas personas con quienes aquél deba formalizarse."

Este párrafo fué interpretado por nosotros en el caso de *Henna* v. *Saurí & Subirá,* 22 D.P.R. 836, 848, en el sentido de que se refería a aquellas escrituras de hipoteca que habían sido otorgadas con anterioridad al año 1893 y que no

estipulaban que el deudor convenía en determinado precio para el caso de la subasta. Este precepto, conforme hemos dicho, ha permanecido inalterado a través de los cuarenta y cinco años que han transcurrido desde que fué aprobado por primera vez en 1893. La única enmienda al artículo 175 bajo la Ley núm..81 de 1936, ha de hallarse en la frase que subrayamos en el siguiente párrafo:

"Todas las demás reclamaciones que puedan formular, así el deudor como los terceros poseedores y los demás interesados, incluso las que versaren sobre nulidad del título o de las actuaciones, o sobre vencimiento, certeza, extinción o cuantía de la deuda, se ventilarán en el juicio plenario que corresponda, sin producir nunca el efecto de suspender ni entorpecer el procedimiento ejecutivo; *pero los efectos de tales reclamaciones quedarán sujetos a lo dispuesto en el artículo 34 de la Ley Hipotecaria en lo que respecta a terceros adquirentes, si del registro no resultasen claramente los motivos de la acción ejercitada.* La competencia para conocer de este juicio declarativo se determinará por las reglas ordinarias.''

La peticionaria sostiene que toda vez que la Ley núm. 81 de 1936 se intitulaba "Ley para *enmendar* el Artículo 175 del Reglamento de la Ley Hipotecaria de Puerto Rico," y que la frase introductoria de la ley provee que "el artículo 175 del Reglamento de la Ley Hipotecaria de Puerto Rico queda *enmendado* y *redactado* del modo siguiente:", a la ley sólo debe dársele el efecto de una enmienda y no de una reenacción.

En apoyo de esta contención el letrado alega en su tercer motivo que nuestro Código de Enjuiciamiento Civil no contiene disposición alguna relativa al procedimiento a seguirse en caso de que la tasación en un procedimiento ejecutivo haya de ser hecha judicialmente. Este procedimiento, alega el letrado, constaba expresamente en la Ley de Enjuiciamiento Civil Española, que ya no está en vigor en Puerto Rico y que fué suplantada por el Código de Enjuiciamiento Civil de 1904. En su consecuencia, sostiene que la referencia que en la ley de 1936 se hace a "el justiprecio, con arre-

glo a la Ley de Enjuiciamiento Civil,'' no puede referirse posiblemente al Código que ahora está en vigor, y debe interpretarse en la misma forma que se hacía antes de 1936.

El peso de la argumentación expresada en los señalamientos duodécimo y décimocuarto consiste ·en el hecho de que si la Ley núm. 81 de 1936 se interpreta en el sentido de que crea, una vez más, la situación que prevaleció desde el 1893 al 1904, el resultado sería que anularía o haría que estuvieran sujetos a ser anulados todos los procedimientos ejecutivos sumarios tramitados después que la Ley de 1936 empezó a regir, en los cuales no se hizo un justiprecio con anterioridad a la venta.

Nos damos cuenta del peso de los argumentos presentados por la peticionaria. No obstante, la ley de 1936, supra, aunque se intitulaba enmienda, fué, con una alteración sin importancia, sustancialmente una reenacción del artículo 175 del Reglamento para la Ejecución de la Ley Hipotecaria conforme el mismo ya existía en los estatutos. Así pues, la legislatura demostró una vez más su intención de que el justiprecio de la finca era un requisito previo indispensable al procedimiento ejecutivo sumario.

Es cierto que la peticionaria llama nuestra atención hacia el hecho de que según el caso de *Henna* v. *Saurí & Subirá*, 22 D.P.R. 836, 848, este tribunal interpretó el artículo 175, supra, como que se refería tan sólo a las escrituras de hipoteca otorgadas con anterioridad al 1893. Empero, dadas las leyes de 1931 y 1936, no podemos llegar a otra conclusión que no sea la de que la legislatura tuvo la intención de dar al artículo 175, según fué enmendado, un alcance mayor. Este artículo restablece el remedio sumario a aquellas hipotecas que caen bajo nuestra decisión en el caso de *Emanuelli* v. *Corte,* 49 D.P.R. 775.

La contención de que como la Ley de Enjuiciamiento Civil Española es a la que se refiere el artículo 175, la interpretación original debe aún seguirse, no es un verdadero

obstáculo. Hemos resuelto en varios casos que el Código de Enjuiciamiento Civil de 1904 tan sólo derogó las disposiciones del antiguo código que no estaban en armonía con la ley existente.

La peticionaria llama nuestra atención hacia la dificultad que podría surgir para los acreedores hipotecarios que han ejecutado sus gravámenes con posterioridad a 1936 en cobro de hipotecas otorgadas con anterioridad a 1931 y que procedieron bajo la asunción de que el justiprecio era innecesario. Tenemos la idea de que esos casos serán relativamente pocos y no se encuentran claramente ante nos. Es posible que semejantes hipotecas pudieran estar protegidas por el principio de *stare decisis* aunque no se nos ha pedido que hagamos tal declaración. Cuanto dijimos en sentido contrario en nuestra opinión principal debe interpretarse a la luz de la anterior posibilidad, de ser la doctrina de *stare decisis* aplicable.

Tomando en consideración todas las circunstancias, aunque admitamos que la peticionaria ha sugerido una interpretación plausible, sostenemos nuestra opinión original de 28 de febrero del año en curso, y *declaramos sin lugar la moción de reconsideración.*