AUTORIDAD DE TIERRAS DE PUERTO RICO, recurrente, *v.* EL
REGISTRADOR DE LA PROPIEDAD DE ARECIBO, recurrido.

Número 1338.
*Sometido:* 26 de marzo de 1959. *Resuelto:* 11 de abril de 1961.

·*Antonio Riera, Ramón Gandía Biscombe, Alberto Ferrer* y *Félix Bello,* abogados de la recurrente; el Registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

En la escritura número dos de 20 de enero de 1956 de préstamo hipotecario y cancelación de mención de préstamo aplazado, otorgada a favor de la recurrente, por los herederos de don Carmelo Cruz Aguila, ante el Notario don Antonio Riera, se incluyó la siguiente cláusula de tasación: "a los efectos de las disposiciones del artículo ciento veintisiete de la Ley Hipotecaria, las partes, de mutuo acuerdo, tasan los

inmuebles hipotecados como sigue: el descrito con la letra 'A' en la suma de cinco mil novecientos veinticinco dólares con cincuenta y cinco centavos ($5,925.55); el descrito con la letra 'B' en la suma de dos mil setecientos diez y nueve dólares con cinco centavos ($2,719.05); el descrito con la letra 'C' en la suma de dos mil cuatrocientos cuarenta y cinco dólares veinte centavos ($2,445.20) y el descrito con la letra 'D' en la suma de tres mil novecientos diez dólares veinte centavos ($3,910.20)."

Presentada la copia de la escritura a inscripción en el Registro de la Propiedad, el Registrador de la Propiedad de Arecibo, consignó el defecto subsanable "de no expresarse la renuncia de todo nuevo avalúo, según los requisitos del art. 66 [reglamento] para la ejecución de la L. H." (Ley Hipotecaria.) De la consignación de ese defecto recurre ante nos la Autoridad de Tierras de Puerto Rico, alegando que tal pacto es innecesario.

■■■ El art. 127 de la Ley Hipotecaria de Puerto Rico de 1893, antes de ser enmendado, disponía: En la escritura de hipoteca se hará constar el precio en que tasan la finca los contratantes, para que sirva de tipo a la *única subasta* que se debe celebrar, en el caso de que, vencido el plazo del préstamo, no conste en el Registro de la Propiedad el pago de dicho préstamo.

El art. 66 del "Reglamento para la Ejecución de la Ley Hipotecaria de 1893" disponía y aún dispone: En las inscripciones de hipoteca se hará constar el precio en que tasan la finca los contratantes y *la renuncia de todo nuevo avalúo o acción encaminada a este fin*. Se hará constar también con toda precisión y claridad el vencimiento de la obligación.

El art. 175 del Reglamento del 1893, disponía y aún en cuanto a la parte pertinente a este asunto, dispone: Los acreedores que tengan inscrito su derecho con *anterioridad a la ley vigente* podrán optar por este procedimiento sumario; más cuando los títulos de sus créditos no expresen la confor-

midad del deudor con un precio determinado para la subasta, habrán de acreditar esta conformidad, consignada en documento público, o pedir el justiprecio, con arreglo a la Ley de Enjuiciamiento Civil para preparar el anuncio de la subasta; entendiéndose siempre aplicables las reglas de esta sección, que señalan el tipo mínimo para salvaguardar las responsabilidades preferentes. Las diligencias para el nombramiento de perito se practicarán al verificarse el requerimiento de pago y se entenderán con las mismas personas con quienes aquel deba formalizarse.

Sabido es que las disposiciones hipotecarias anteriores al 1893, no reconocían el procedimiento ejecutivo sumario para el cobro de hipoteca. Casualmente, fueron la Ley y el reglamento del 1893 los que introdujeron el nuevo procedimiento. Había que disponer no sólo sobre el traslado de los antiguos asientos hipotecarios a los nuevos libros del registro, sino también disponer aquellas medidas que hicieran factible la ejecución de las anteriores hipotecas de acuerdo con el nuevo procedimiento establecido.

En cuanto a la tasación para la celebración de la primera subasta se refiere, las disposiciones originales del 1893 tenían dos métodos para hacer uniforme el procedimiento: (1) Si la hipoteca se había otorgado *con anterioridad* a la fecha de vigencia de la Ley Hipotecaria, la tasación debía hacerse de acuerdo con el art. 175 del Reglamento, pudiendo optar los interesados entre conseguir un pacto expreso sobre tasación de la propiedad para la única subasta que se celebraría y en caso que esto no fuera posible, pedir el justiprecio con arreglo a la Ley de Enjuiciamiento Civil española; (2) Si la hipoteca se otorgaba *con posterioridad* a la fecha de vigencia, debía incluirse como una de las cláusulas de la hipoteca la tasación de la propiedad de acuerdo con el artículo 127 de la Ley Hipotecaria para la *única subasta* a celebrarse.

Estas disposiciones del 1893, como cuestión de hecho, quedaron sin efecto desde el caso de *Giménez et al.* v. *Brenes,*

10 D.P.R. 128, (Figueras), (1906), cita precisa a la pág. 140, en el cual se resolvió, que "el procedimiento especial para el cobro de créditos garantidos con hipoteca está todavía vigente en su parte inicial o sea hasta el requerimiento inclusive al deudor para el pago de la deuda, y derogado en la parte que podría llamarse 'vía de apremio', es decir en lo que se refiere a la venta de la propiedad gravada con la hipoteca, venta que debe sujetarse en un todo a lo dispuesto en la repetida ley aprobada en 9 de marzo de 1905 que al modo de satisfacer las sentencias se refiere". Dicho criterio se siguió en el caso de *Cintrón et al.* v. *Banco Territorial y Agrícola*, 15 D.P.R. 507 (Hernández, Juez Presidente), (1909), cita precisa a la pág. 524. En consonancia con dicho criterio se resolvió en el caso de *P. R. Leaf Tobacco Co.* v. *Reg. de Guayama*, 23 D.P.R. 507 (Hutchison), cita precisa a la pág. 509: "De conformidad con la ley de 1905, no existe indicación alguna respecto a un precio mínimo ni ninguna posibilidad de alguna controversia o cuestión acerca de la debida valoración de la finca que ha de venderse. Resulta, pues, que el artículo 127 de la Ley Hipotecaria carece actualmente de finalidad práctica..." Sobre esta misma cuestión véase además el caso de *Bolívar et al.* v. *Registrador*, 13 D.P.R. 375 (Quiñones), (1907), cita precisa a la pág. 378.

El 2 de mayo de 1931, la Asamblea Legislativa de Puerto Rico aprobó la Ley número 69 para enmendar el art. 127 de la Ley Hipotecaria, disponiendo:

Artículo 1—En la escritura de hipoteca se hará constar el precio en que tasan la finca los contratantes para que sirva de tipo a la *primera subasta* que se debe celebrar, en el caso de que, vencido el plazo del préstamo no conste en el registro de (la) propiedad el pago de dicho préstamo.

Si no produjere remate ni adjudicación la primera subasta, en la segunda que se celebrare servirán de tipo las dos terceras partes del precio en que hayan tasado la finca los contratantes, pero cuando esas dos terceras partes no excedieren de la cuantía de las responsabilidades preferentes, esa cuantía señalará el mínimo de las posturas admisibles.

Si tampoco hubiere remate ni adjudicación en la segunda subasta, regirá como tipo en las otras subastas que pudieran celebrarse el valor total a que ascienden los créditos preferentes.

Artículo 2—Las disposiciones de la Ley de 9 de marzo de 1905, relativa a las sentencias y a la manera de satisfacerlas en cuanto se opongan a los preceptos del artículo 127 de la Ley Hipotecaria, según quedó enmendado por el artículo anterior, y toda otra ley o parte de ley que esté en contradicción con la presente, quedan derogadas.

El día 13 de mayo de 1936, la Asamblea Legislativa de Puerto Rico aprobó la Ley número 81 para enmendar el art. 175 del Reglamento hipotecario, y en la reformulación del mismo, dejó vigente en toda su extensión, la disposición original del 1893 que anteriormente hemos reseñado en el cuerpo de esta opinión.

Estas dos enmiendas dejaron sin efecto la doctrina establecida por este Tribunal en *Giménez et al* v. *Brenes*, supra, y produjo una nueva decisión: *Cotto* v. *Corte*, 52 D.P.R. 567, (Wolf); (1938), cita precisa a la pág. 570: "Hemos leído cuidadosamente las leyes de 1931 y 1936 e interpretado su aprobación en el sentido de expresar la intención legislativa de poner en vigor un sistema completo para la valoración de propiedades antes de su venta, en forma algo similar a la existente entre 1893 y 1905. Creemos que la ley de 1936 comprende toda hipoteca inscrita con anterioridad a su aprobación. Además, somos del criterio de que la Ley es retroactiva y que meramente afecta el procedimiento a seguirse en el ejecutivo sumario, cuando la escritura no expresa el precio mínimo en que debe venderse la finca en la primera subasta. Tal interpretación conduce a que se establezca un procedimiento uniforme para todos los ejecutivos sumarios." Solicitada la reconsideración, *Cotto* v. *Corte*, 53 D.P.R. 367, (Wolf), (1938), cita precisa a las págs. 370–372 se sostuvo que la enmienda del 1936 es "una reenacción del art. 175 del Reglamento para la Ejecución de la Ley Hipotecaria, conforme el mismo existía ya en los estatutos", el cual exigía, cuando no hubiera una tasación de la propiedad para los fines

de la subasta, un justiprecio judicial mediante el procedimiento establecido por la Ley de Enjuiciamiento Civil española. En este caso se resolvió, que en cuanto al procedimiento de justiprecio, la anterior Ley de Enjuiciamiento Civil española estaba todavía vigente (t. pág. 371 *in fine* y 372).

Con este cuadro legislativo-doctrinal ante nuestros ojos, es fácil ahora concluir que la disposición del art. 66 del Reglamento, en el sentido, que en las inscripciones de hipoteca se hará constar el precio en que tasan la finca los contratantes *y la renuncia de todo nuevo avalúo o acción encaminada a este fin* (justiprecio) se refería al estado de la Ley en 1893 en cuanto a las hipotecas otorgadas con anterioridad al 1893, en que, de acuerdo con el art. 175 del Reglamento, se le concedía al acreedor hipotecario que interesaba utilizar el nuevo procedimiento, la alternativa de conseguir un pacto expreso sobre la tasación de la propiedad *con renuncia de todo nuevo avalúo* para la *única subasta* dispuesta originalmente por el art. 127 y con renuncia de toda acción de justiprecio, o proceder al justiprecio en cuyo caso, se podían aplicar las disposiciones del art. 128 de la Ley en cuanto a subastas posteriores—*Cintrón* v. *El Banco Territorial y Agrícola*, 9 D.P.R. 244 (Hernández), (1905), cita precisa a la pág. 285.

Es indudable que el nuevo art. 127 de la Ley Hipotecaria de Puerto Rico—reenactado, reformulado, o simplemente encaminado a dejar sin efecto la doctrina judicial establecida con vista a la Ley Relativa a las Sentencias y a la Manera de Satisfacerlas de 9 de marzo de 1905, la cual resultaba totalmente onerosa para el deudor hipotecante ejecutado, no sólo varió la disposición de única subasta que contenía la Ley de 1893, sino que estableció un "pacto legal" que determina el montante de las subastas posteriores, variando en este sentido a su vez, la multiplicidad de subastas autorizadas por el art. 128 de nuestra Ley hipotecaria. Cualquier renuncia a dicho pacto legal implícito, por ser contrario a ley, sería nulo.

*Debe revocarse la nota del recurrido consignando el defecto subsanable objeto de esta opinión.*