ARACELIS VECHINI VDA. DE VÉLEZ, recurrente *v.* EL REGIS-TRADOR DE LA PROPIEDAD DE GUAYAMA, recurrido.

*Número:* 1369    *Resuelto:* 19 de diciembre de 1961

*C. Domínguez y Rubio,* abogado de la recurrente.    *El Registrador* recurrido compareció por escrito.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Santana Becerra y Rigau.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

En garantía de un préstamo por $5,000, intereses al 7 por ciento anual y una suma de $350.00 para gastos, costas y honorarios de abogado, los esposos don Pablo Morales y doña Irene Pabón, constituyeron primera hipoteca sobre una finca de su propiedad a favor de doña Aracelis Vechini Vda. de Vélez. La finca hipotecada fue justipreciada por las partes en $6,000.

Por falta de pago de ciertas partidas de intereses, la acreedora hipotecaria instó procedimiento ejecutivo sumario ante el Tribunal Superior, Sala de Guayama. Hecho el requerimiento correspondiente sin que los deudores pagaran las sumas adeudadas, se decretó la venta en pública subasta del inmueble hipotecado por el precio mínimo de $6,000.

Celebrada la primera subasta fue declarada desierta por falta de postores. Se señaló una segunda subasta por las dos terceras partes del precio en que había sido valorada la finca hipotecada. No habiendo concurrido a esta subasta otros postores, el alguacil adjudicó la finca a la ejecutante por la oferta que ésta hizo de $4,000.

El alguacil otorgó la correspondiente escritura de venta judicial de dicho inmueble por la cantidad de $4,000 para abonar al crédito de la reclamante. El Registrador de la Propiedad de Guayama denegó la inscripción de dicha escritura mediante la siguiente nota:

"Denegada la inscripción del presente documento al folio 249 del tomo 35 de Salinas, finca Núm. 1193 duplicado, Anot. A, por observarse que tratándose de la ejecución de una hipoteca por la vía sumaria hipotecaria la ejecutante doña Aracelis Vechinni no podía adjudicarse la finca hipotecada objeto de la ejecución y venta en la segunda subasta celebrada el día 4 de Septiembre de 1956, por no haber concurrido postores a dicha segunda subasta al igual que en la primera subasta celebrada y declarada desierta el 30 de julio de 1956 y no habiendo concurrido postores no podía producirse remate ni adjudicación a la ejecutante en dicha segunda subasta por el precio mínimo de las dos terceras partes de la valoración de la finca entendiendo el suscribiente que sólo podía producirse la adjudicación a la

ejecutante en una tercera subasta por el montante de los créditos preferentes; todo ello de acuerdo con el artículo 127 de la Ley Hipotecaria; habiéndose tomado en su lugar anotación preventiva por el término legal de 120 días a favor de la ejecutante y adjudicataria, en subasta doña Aracelis Vechini viuda de Vélez. Dicha finca está afecta como única carga la hipoteca objeto de ejecución."

Los fundamentos de la anterior nota son erróneos. Sostiene el Registrador que (1) el artículo 172 del Reglamento de la Ley Hipotecaria tiene vigencia plena, (2) que las ⅔ partes no constituyen precio o valor inalterable o forzoso y que cuando el justiprecio es inferior a los créditos preferentes entonces el importe de estos créditos preferentes es el tipo mínimo admisible y el justiprecio sólo lo es cuando excede a aquéllos y que no habiendo otros acreedores, el crédito de la ejecutante era un crédito preferente, y (3) que siendo el crédito preferente de la ejecutante de $5,554.17 superior a los $4,000 que son las ⅔ partes del valor fijado, el tipo mínimo admisible en la subasta eran los susodichos $5,544.17 y no los $4,000 y mucho menos como abono al crédito de la ejecutante. ■

"Antes de 1893 un acreedor hipotecario no necesitaba hacer una previa tasación o valoración de la propiedad en la escritura. Sin embargo, el artículo 127 de la Ley Hipotecaria de 1893 disponía que se hiciera tal tasación, y el artículo 175 del Reglamento proveía la manera de subsanar tal omisión en las hipotecas constituidas con anterioridad a dicho estatuto si las mismas iban a ser ejecutadas sumariamente. Entonces vino la ley de marzo 9, 1905 (Comp. 5295-5303), y prescribió la forma en que se debían satisfacer las sentencias. Desde 1905 hasta 1931 era innecesario que los acreedores garantizados y los deudores acordaran en la escritura de hipoteca, o posteriormente, el precio que debía fijarse a la propiedad hipotecada. En 1931 la Legislatura aprobó la Ley núm. 69 de 1931 (Leyes de ese año, pág. 433), que reenactó el artículo 127 de la Ley Hipotecaria en el sentido de exigir nuevamente que en las escrituras de hipoteca se hiciera constar el valor que debía fijársele a las fincas en la primera subasta, y lo enmendó en el sentido de exigir más de una subasta." (*Cotto* v. *Corte,* 52 D.P.R. 567, 569.)

El indicado artículo 127 de la Ley Hipotecaria [30 L.P.R.A. sec. 223], según se restableció enmendado por la Ley Núm. 69 de 2 de mayo de 1931, dispone:

"§223. Valor de la finca deberá hacerse constar en la escritura de hipoteca; tipo de valoración para las subastas

"En la escritura de hipoteca se hará constar el precio en que tasan la finca los contratantes, para que sirva de tipo a la primera subasta que se debe celebrar, en el caso de que, vencido el plazo del préstamo, no conste en el registro de propiedad el pago de dicho préstamo.

"Si no produjere remate ni adjudicación la primera subasta, en la segunda que se celebrare servirán de tipo las dos terceras partes del precio en que hayan tasado la finca los contratantes, pero cuando esas dos terceras partes no excedieren de la cuantía de las responsabilidades preferentes, esa cuantía señalará el mínimo de las posturas admisibles.

"Si tampoco hubiere remate ni adjudicación en la segunda subasta, regirá como tipo en las otras subastas que pudieran celebrarse el valor total a que ascienden los créditos preferentes." ■

Resulta meridianamente claro que en virtud de las disposiciones de este artículo, dejó de tener vigencia el artículo 172 del Reglamento de la Ley Hipotecaria en sus últimos tres apartados, según afirma correctamente el profesor Muñoz Morales.(¹) Los últimos cuatro párrafos del indicado artículo 172, que para mayor claridad los enumeraremos del 6 al 9, disponen:

6—"La subasta se verificará en la forma prevenida para el juicio ejecutivo; pero cuando las dos terceras partes del tipo marcado en los edictos no excediere de la cuantía de las responsabilidades preferentes, esta cuantía señalará el mínimo de las posturas admisibles.

7—"No habiendo postor en esta primera subasta, podrá el ejecutante pedir que se le adjudiquen los bienes por el menor tipo que hubiera podido admitirse a un rematante, según el párrafo anterior, respondiendo de todas las cargas anteriores y

---

(¹) Luis Muñoz Morales, Lecciones de Derecho Hipotecario, Tomo 2, pág. 178.

debiendo consignar el exceso que acaso resulte, cubierto su crédito. Este exceso se entregará a quien corresponda, depositándolo el juez a disposición del mismo en el establecimiento público destinado al efecto, si no quedare entregado dentro de los diez días siguientes a la consignación.

8—"Si el ejecutante no pidiere la adjudicación, podrá solicitar que se pongan de nuevo los bienes hipotecados en pública subasta con rebaja del 25 por 100 del tipo fijado en la primera, con tal que esta reducción deje cubiertos los créditos anteriores. Para ello deberá presentar el actor nueva certificación del registro, expresiva de que su hipoteca no ha sido cancelada, si hubiese estado suspenso el procedimiento por más de seis meses. Esta subasta se verificará en la misma forma que la primera, pudiendo admitirse posturas que cubran los dos tercios del precio reducido, siempre que cubran los créditos preferentes al del actor. También podrá éste pedir la adjudicación, en las condiciones expresadas, si la segunda subasta quedare desierta en todo o en parte.

9—"No produciendo remate ni adjudicación la segunda subasta, podrán celebrarse otras a instancia del actor, llenando éste en su caso el requisito que se expresa en los párrafos precedentes, por el precio irreductible equivalente a los créditos preferentes. También podrá pedirse en tal caso la adjudicación por este mismo precio, con obligación de cubrir dichas cargas a su vencimiento, subrogándose respecto de ellas en el lugar del deudor." (30 L.P.R.A., págs. 110, 111.) ■

La forma de la subasta no se rige por estas disposiciones. Según ellas la subasta se verificará en la forma prevenida para el juicio ejecutivo que era la regulada por la antigua Ley de Enjuiciamiento Civil y según la cual no podían hacerse posturas en la subasta que no cubrieran las dos terceras partes del avalúo. Por el contrario el artículo 127 de la Ley Hipotecaria dispone que el tipo mínimo para la primera subasta será el fijado por los contratantes y para la segunda subasta servirán de tipo las dos terceras partes de dicho precio.

Se observará que en este caso se siguieron estrictamente las normas establecidas en el artículo 127 de la Ley Hipotecaria. En la primera subasta declarada desierta se fijó como

tipo mínimo el precio en que los contratantes tasaron la finca, o sea, $6,000. En la segunda subasta, que produjo remate y adjudicación, se señaló como tipo mínimo las dos terceras partes del justiprecio, o sea, $4,000 y por dicha suma se adjudicó la finca a la acreedora hipotecaria.

El Registrador sostiene, sin embargo, lo siguiente:

"Considerando la vigencia plena del artículo 172 del R.H. nos permitimos ahora señalar a los ilustres señores Magistrados como es que hemos apreciado el alcance de dicho precepto para llegar a la nota denegatoria objeto del presente recurso.

"Hay identidad entre los siguientes apartados de los artículos invocados o sean el 127 de la L.H. y el 172 del reglamento:

'Art. 127(2).—Si no produjere remate ni adjudicación la primera subasta, en la segunda que se celebre servirá de tipo las dos terceras partes del precio en que hayan tasado la finca los contratantes, *pero cuando esas dos terceras partes no excedan de la cuantía de las responsabilidades preferentes, esa cuantía señalará el mínimo de las posturas admisibles.*'

'Art. 172 Reg. (3).—Cuando las responsabilidades preferentes sean más cuantiosas, su importe total será el tipo mínimo de la subasta.'

"Luego, en el apartado 6 se repite de la manera siguiente:

'. . . pero cuando las dos terceras partes del tipo marcado en los edictos no excediere de la cuantía de las responsabilidades preferentes, *esta cuantía señalará el mínimo de las posturas admisibles.*'

"Se observará que los transcritos párrafos del reglamento hipotecario dicen 'esta cuantía' y 'su importe' refiriéndose al importe a que monten las responsabilidades preferentes. Como en el caso de autos no hay otras responsabilidades preferentes al crédito ejecutado, el único preferente resulta serlo el de la propia ejecutante el cual, por los conceptos de principal, intereses y costas y honorarios de abogados, monta a la suma de $5,554.17. (14 D.P.R. 674–677 *Malaret* v. *Sobrinos de Ezquiaga.*)

"Y si bien tanto el 127 de la L. H. supra expresa lo mismo que los transcritos apartados del 172 de su reglamento, es de

notarse que el primero se refiere a la segunda subasta, mientras que el segundo hace referencia a la primera. Esto último resulta evidente ya que en el apartado 7 del 172 se dice así:

'No habiendo postor en *esta primera subasta,* podrá el ejecutante pedir que se le adjudiquen los bienes por el menor tipo que hubiere podido admitirse a un rematante, según al párrafo anterior, respondiendo de todas las cargas y debiendo consignar el exceso que acaso resulte, cubierto su crédito'...

"Con arreglo a la regla de este párrafo, la ejecutante pudo adjudicarse la finca en la *segunda subasta* 'por el menor tipo que hubiere podido admitirse a un rematante, según el párrafo anterior'. ¿Cuál hubiera sido ese menor tipo? Con arreglo al inciso 6 del 172 del R.H. que se refiere a la primera subasta ese 'menor tipo' lo era el importe de las responsabilidades preferentes o sea el importe del propio crédito ejecutado por no haber otros (14 D.P.R. 674–677 supra) o sean $5,554.17 y no las dos terceras partes que se tomaron o sean $4,000." (Alegato del Registrador, págs. 3 y 4.) ■

La tesis del Registrador descansa en una premisa errónea, confundido tal vez por el *dictum* en el caso de *Malaret* v. *Sobrinos de Ezquiaga,* supra, al efecto de que cuando no existen otras responsabilidades preferentes el crédito del ejecutante resulta ser el único preferente. Las responsabilidades preferentes son aquéllas que gozan de primacía sobre la del acreedor ejecutante. Si no las hay, no puede hablarse de responsabilidades o créditos preferentes. "Preferente" significa que se prefiere y "preferir", *dar* preferencia. *"Preferencia"* de acuerdo con el Diccionario de la Real Academia, (pág. 1059) significa, entre otras acepciones, "Primacía, ventaja o mayoría que una persona o cosa tiene sobre otra, ya en el valor, ya en el merecimiento." Más aun, el propio artículo 172 del Reglamento de la Ley Hipotecaria, aunque carece hoy de vigencia, aclara las dudas sobre cuáles son los créditos preferentes a que la ley se refiere. Dispone dicho párrafo que la segunda subasta se verificará en la misma forma que la primera, "pudiendo admitirse posturas que cubran los dos tercios del precio reducido, *siempre que cubran los créditos*

*preferentes al del actor*".    El artículo 128 de la Ley Hipotecaria hace también referencia a los *créditos* preferentes, aunque no los llama por sus nombres.    Dispone en parte dicho artículo que cuando se subasta la finca a instancia de un segundo o posterior acreedor hipotecario o de acreedores comunes, se declarará sin efecto tal subasta si no se ofrece cantidad suficiente para pagar, con los intereses que consten en el Registro, "*todos los créditos anteriormente inscritos.*"    Indudablemente que estos créditos sí son preferentes al del actor.    El artículo 173 del Reglamento provee para el caso de que verificada cualquier subasta en la que hubieren sido admisibles posturas iguales *a los créditos preferentes al del actor* no se remataren los bienes.

"Las palabras 'cargas o gravámenes anteriores y los preferentes si los hubieren'—dice Morell al Tomo 7, pág. 125—"son a nuestro juicio claras.    La palabra anteriores según un comentarista, refiérese a las cargas, preferentes dice a los gravámenes.    Entendemos que la palabra anteriores se refiere claramente a cargas o gravámenes y que lo mismo ocurre respecto a la palabra preferente.    La Ley quiere que se respete todo derecho *preferente al del actor*, ya lo sea por su naturaleza, ya por su fecha, ya por la fecha de su inscripción, ya por convenio entre los interesados y se apoye en una inscripción o en una anotación."    Véase, además 3 Barrachina, *Derecho Hipotecario y Notarial*, pág. 170; Muñoz, *ob. cit.*, págs. 225–230.

Por otro lado, la tesis del Registrador equivale a dejar sin efecto las claras disposiciones del artículo 127 de la Ley Hipotecaria.    Habiéndose ajustado la forma de la subasta, así como el remate y adjudicación efectuada en este caso, a las disposiciones de dicho artículo, *la nota recurrida será revocada.*